## ELLINGWOOD *v.* BRAGG.

Upon the question whether a long account upon a party's books was written at different times, as it purported to be, or whether it was all written with the same pen and ink and at the same time, a witness testified that he had been in practice as a lawyer some forty years, and had had about the same experience as lawyers in general in the examination and comparison of handwritings; that he had been engaged in one or two cases which led him particularly to examine and compare handwritings, but he did not claim to be able to give an opinion upon which any great reliance could be placed. *Held*, that the admission of the witness to testify as an expert was erroneous.

The ruling of a judge, at *nisi prius*, upon the qualifications of a witness to testify as an expert, will not be revised, unless the question of discretion is fully reserved by the presiding judge.

*Dole* v. *Johnson*, 50 N. H. 452, affirmed.

A new trial will be ordered on account of the reception of improper evidence, unless it very clearly appear that such evidence could not have affected the verdict.

ASSUMPSIT, by John W. Ellingwood against Wm. W. Bragg. The plaintiff offered Wm. Heywood as an expert, to give an opinion upon the question whether a long account upon the defendant's books against the plaintiff was written at different times, as it purported to be on the book, or whether it was all written with the same pen and ink and at the same time. The witness testified that he had been in practice as an attorney-at-law some forty years, and had had about the same experience as lawyers in general in the examination and comparison of handwritings; that he had been engaged in one or two cases which led him particularly to examine and compare handwritings, but he did not claim to be able to give an opinion upon which any great reliance could be placed. The court allowed him to give his opinion as an expert, and the defendant excepted. The question of discretion was fully reserved.

The questions of law thus raised were reserved.

*Aldrich & Shurtleff*, *Hartshorn*, and *Ray & Drew*, for the plaintiff.

*Dudley* and *G. A. Bingham*, for the defendant.

FOSTER, J.*   The defendant excepted to the ruling of the court, admitting the testimony of Mr. Heywood as an expert. The rules, which govern the determination of the question thus presented, were declared by this court in the recent case of *Dole* v. *Johnson*, 50 N. H. 452; and we see no reason to modify the views then expressed.

According to that case (and upon elementary principles), in order to qualify one to testify as an expert, it should appear, in the first place, that the subject concerning which he is called to testify is one upon which the opinion of an expert can be received. The subject must be one peculiar and exceptional, concerning which some explanation, such as peculiar knowledge alone can afford, is required, in order to render it intelligible to the comprehension and understanding of ordinary men. In other words, the subject-matter of the evidence "must so far partake of the nature of a science as to require a course of previous habit or study in order to the attainment of a knowledge of it." Smith's note to *Carter* v. *Boehm*, 1 Smith's L. Cases *286 *a*.

The rule which admits the testimony of experts, in any case, is exceptional; and all evidence, which is not founded upon absolute knowledge of the facts pertaining to the cause under investigation, should be received with caution. See *Brehm* v. *The Great Western Railway Co.*, 34 Barb. 273.

We are not disposed to enlarge, but rather to restrain within as narrow limits as a due regard for the ascertainment of truth in judicial investigations will allow, all such encroachments, so to speak, upon

---

* LADD, J., did not sit.

the province of the jury as shall permit witnesses to express opinions merely.

We are not prepared to say that the subject-matter of Mr. Heywood's testimony was one upon which the opinion of an expert was inadmissible. But it comes very near the line of demarcation.

It is not like a question concerning the genuineness of a signature or other writing, about which persons, like cashiers of banks, for example, skilled by a course of study, training, and practice, may undoubtedly be called to assist the investigations of unskilled jurors. It is more, perhaps, like the case of a comparison of writings, which was formerly held in England to be inadmissible, for reasons not applicable to New England and its officers and institutions, namely, because the jury were supposed to be too illiterate to judge of this sort of evidence.

The question here is not whether the writings were genuine or feigned, but whether the items of account were written at different times, or whether they were all written at the same time with the same pen and ink.

It is admitted, as we understand it, that the items were all written by the same person,—by which admission the principal and most difficult investigation is withdrawn from the case; and the other question would seem to rest more upon conclusions to be drawn from the general appearance of the color of the ink, and the coarse or fine character of the letters, and their uniformity or diversity in this respect, than from any other sources of knowledge. Such comparison and examination, it seems to us, might not imprudently be entrusted to such men as usually compose our panels of jurors.

But whether the subject upon which Mr. Heywood was called to testify was one upon which the opinion of an expert may be received or not, we are clearly of the opinion that the witness did not possess the legal qualifications requisite to enable him to testify in the capacity of an expert.

In this matter, our opinion coincides with his own, as it was modestly, but conscientiously, expressed upon the witness-stand.

His attention had only once or twice, in the course of a long professional experience as a lawyer, been particularly called to the examination and comparison of handwritings.

He was not, with reference to the subject under investigation, a man of science, and he was not qualified by any previous habit and course of attention, observation, and particular and special study in that direction.

The possession of some, at least, of these qualifications was, in the opinion of this court two years ago, deemed essential to the admissibility of such testimony, in the exercise of a prudent judicial discretion. *Dole* v. *Johnson,* 50 N. H. 452, 459.

We may reasonably doubt whether the verdict of the jury was obtained or influenced by the evidence thus improperly received, since, as already remarked, the subject-matter of the evidence was one which

the jury might, perhaps, determine upon their own inspection. And it is matter of deep regret that the question of discretion should be reserved in cases like this, the competency of such evidence being most conveniently and satisfactorily determined at the trial, upon personal examination of the witness. *Dole* v. *Johnson*. This court cannot deal with the matter so confidently as the presiding judge; and the revision of the question, by a tribunal not so competent to consider and pass upon it as the tribunal by which it is reserved, seems an almost unwarrantable expenditure of labor, time, and pecuniary cost.

But, since the question is reserved and must be determined, we see no way to avoid the expense and delay of a new trial of the cause.

" Courts will not set aside a verdict on account of the admission of evidence which ought not to have been received, provided there be sufficient without it to authorize the finding of the jury," said MANSFIELD, C. J., in *Horford* v. *Wilson*, 1 Taunt. 12, 14; but we cannot endorse so broad a statement as that, contrary as it is to the current of authority, and evidently involving in its application immense practical difficulty.

Jurors alone, and not courts at all, are to determine the weight of the evidence, and the court can never say what effect any fact that is relevant may have or may have had on the minds of the jury. *Edwards* v. *Evans*, 3 East 451, 455.

It would be an extremely dangerous usurpation of power to undertake such functions; and it can be only where a case has been clearly and indisputably made out, without the objectionable evidence, that a new trial can properly be refused. See Hilliard on New Trials 43, 44.

Therefore, it was held in *Wright* v. *Tatham*, 7 Ad. & E. 313, that where improper evidence was received, and a verdict given for the party adducing it, the court will grant a new trial, although there be other evidence to the same point in favor of the same party, unless they can see clearly that the improper evidence could not have weighed with the jury, or that the verdict, if given the other way, would have been set aside as against evidence.

In *Fletcher* v. *Marshall*, 15 M. & W. 755, ALDERSON, B., declares the rule to be,—" where evidence has been improperly rejected or admitted, the court will not grant a new trial, if, with the evidence rejected, a verdict given for the party offering it would be clearly against the weight of evidence, or if without the evidence there would be enough to warrant the verdict."

But the evidence is not spread before us. We know nothing about it. We cannot judge, from so much as is disclosed, whether without the evidence of Mr. Heywood there would be enough to warrant the verdict, or whether his testimony was the weighty and controlling evidence in the case or not.

Nor would we be at liberty to say that evidence, which *we* might regard as of slight or of overwhelming importance, would be regarded in the same light by a jury. It must *very clearly* appear that the improper evidence could not have affected the verdict, to warrant us in

refusing a new trial. See *Crease* v. *Barrett*, 1 C. M. & R. 919; *Edwards* v. *Evans*, 3 East 451, 455.

The question of discretion being fully reserved in the present case, we are unhesitatingly brought to the conclusion that the verdict should be set aside for error in the admission of Mr. Heywood's testimony.

*A new trial granted.*