GEORGE H. BILLINGS *vs.* INHABITANTS OF MONMOUTH.

Kennebec.    Opinion April 6, 1881.

*Exceptions.    Money had and received — action for, against a town.*

Exceptions taken to the admission of notes declared upon, and other pieces of evidence to show the consideration, and authority for, or ratification of such notes, are deprived of all validity as grounds for a new trial where the jury are peremptorily instructed that these notes were not authorized nor ratified by the defendant, that there was nothing in the case to warrant any such inference, and finally that, "that lays the notes out of the case, and brings us to the other count, that for money had and received."

An action for money had and received to his use, may be maintained by one who, upon representation of town officers that money was needed for municipal use, has furnished them money for such use, if he goes farther and proves that that money was actually applied by such officers to the extinguishment of some of the lawful and proper debts and liabilities of the town.

ON EXCEPTIONS and motion for a new trial.

Assumpsit on three promissory notes signed "William G. Brown, Treasurer;" also for money had and received.

Plea was general issue, and statute of limitations was set up under a brief statement.

The verdict was for $3004.81.

The exceptions relate to the admission in evidence, of the notes declared upon, of certain other notes, and of the records, accounts, and settlements with the treasurer, of the defendant town.  Exceptions were also taken to the part of the charge to the jury given below :

"Now a question is raised here in the very beginning whether these notes are the notes of the town, or the notes of the treasurer.  I do not deem it necessary to state in regard to that now.

I do not care to state it for the reason that there are several actions pending, in which that very question will be raised and will be finally settled by the law court. And it is sufficient for me to say to you, that those notes were not authorized by any vote of the town . . . That lays the notes out of the case," and to other parts of the charge covering several pages.

*G. C. Vose*, for the plaintiff, cited: *Jefts* v. *York*, 4 Cush. 371; *Jones* v. *Wolcott*, 2 Allen, 247; *Barlow* v. *Cong. Soc. in Lee*, 8 Allen, 460; *Gould* v. *Sterling*, 23 N. Y. 456; *F. & M. Bank* v. *B. & D. Bank*, 16 N. Y. 125; *Hern* v. *Nichols*, 1 Salk. 289.

*J. H. Potter*, for the defendants.

If the notes declared on are the individual notes of Brown, then of course they are not admissible. If they are held to be town notes in form, then they should not have been read in evidence, until it was first shown that they were issued by the express permission of the town in its corporate capacity. No such permission was shown, none existed. *Rich* v. *Errol*, 51 N. H. 350.

Again, though in 1865, Brown, the treasurer, was authorized to hire money, yet he was not authorized to issue commercial paper for the same. *Parsons* v. *Monmouth*, 70 Maine, 264, and cases therein cited.

Therefore, the Leuzader notes, dated February 4, 1865, February 6, 1865, and March 10, 1865, were clearly inadmissible on any ground.

The several amounts claimed to have been paid as interest on the Jack, Johnson, Smith and Leuzader notes were, we submit, inadmissible. Counsel for plaintiff claimed that he offered them to show that those notes were not barred by the statute of limitation. But the statute of limitations was only pleaded and could only be pleaded to the notes sued, and the above named notes were not in suit.

The reports of the treasurer from 1864 to 1877, inclusive, made at the annual March meetings, were placed in evidence and read to the jury. These reports are merely statements, in

gross, of the treasurer's account with the town. Nothing is stated in detail, no notes are specifically mentioned, no one could tell whose notes were there, of whom money was borrowed, or to whom the town was indebted. We know of no legal ground on which they were admissible, and can conceive of no purpose for which counsel offered them, (he stated none) unless it was as evidence of ratification by the town of the unauthorized acts of the treasurer in issuing the notes declared on, and others.

In 1866, a case involving this identical question came before the full bench of Massachusetts, *Dickinson* v. *Conway*, 12 Allen, 487, where it was held that the report of the treasurer, accepted by the town, presented no evidence of ratification to be presented to the jury.

In *Dedham Institution for Savings* v. *Slack*, 6 Cush. 409; *Rich* v. *Errol*, 51 N. H. 350; *Benoit* v. *Conway*, 10 Allen, 528, the same rule of law was advanced and maintained.

The presiding judge in his instruction to the jury refused to rule on the question whether the notes declared on were individual notes, or in form, town notes.

Had the learned judge instructed the jury, that the notes declared on were the individual notes of Brown, then that would have ended the conflict, and the plaintiff would have been non-suited.

There is no pretence either in the testimony or the charge that the treasurer was authorized to hire any money for which these notes were given (unless it be the five hundred dollars note.) Therefore, the vital question was what became of the money? And this raised the all important question, viz: the deficiency in the treasury. And the defendants had a right to inquire into every minutiæ pertaining to that deficiency. The learned judge should have given the jury the widest latitude in that direction, and even should have impressed upon them the necessity of thoroughly investigating this branch of the case.

BARROWS, J. The defendants' objections to the reception in evidence of the notes sued, and certain other notes and renewals thereof, which were claimed by plaintiff in one phase of the case to constitute the consideration of the notes in suit, and like objec-

tions to the records of the doings of the town at various town meetings, between 1862, and 1872, and to the reports of the town treasurer at its annual meetings, from 1865 to 1877 inclusive, all accepted by the town, and to the settlements of the treasurer with the selectmen, if said objections could be supposed in any view of them to possess merit, became altogether immaterial, when the presiding judge, with full instructions as to the effect of a want of authority upon the validity of the notes, peremptorily instructed the jury that "these notes were not authorized by any vote of the town, that they were not ratified, that there was nothing in the case which would authorize any such inference," and finally, that "that lays the notes out of the case, and brings us to the other count, that for money had and received."

Nor do we see how the testimony could have been excluded; for the presiding judge could not say in advance, that the plaintiff would be unable to produce evidence of authority to the town officers to make the notes, nor that there would be no proof of a ratification which would bind the town. A rule which would exclude a piece of evidence, because in and of itself it is insufficient to establish the proposition which the party offering it, seeks to maintain, and because without something more which may or may not be forthcoming it is useless and irrelevant, is obviously impracticable, for it would enable an adversary to exclude piecemeal, what taken as a whole would maintain the issue.

Something may be, and often is done in the discretion of the court, by way of requiring a certain order in the introduction of the evidence; but it can hardly be deemed error to trust somewhat in the intelligence, honor and integrity of counsel, to furnish the necessary connecting links, and when they fail to do so, a distinct ruling which lays the defective evidence out of the case will leave the objecting party no substantial cause of complaint. *Penn. R. R. Co.* v. *Roy,* U. S. Sup. Ct. December, 1880. The Reporter, vol x, p. 793.

Here it was a subject of contention, both in law and fact, between the parties, whether these notes had been authorized or ratified by the town. To apply the testimony touching it intel-

ligently, it was proper that the notes should be presented; and we fail to see any plausible ground of objection to the admission of the records of the town and its action. The acts of the town and its officers must be known, in order that their effect upon the subject of controversy might be canvassed; and even had the ruling been less peremptory than it was upon the questions of authority and ratification, it would be difficult to find any good cause of complaint in the admission of this evidence. The defendants' counsel insists in argument upon the refusal of the presiding judge to rule upon the question, whether the notes were in form notes of the town, or notes which could bind the treasurer only. If the instructions to the jury had permitted a recovery upon the notes in any contingency, that inquiry would seem to be pertinent. But they did not. The notes were "laid out of the case," and the plaintiff's right to recover was made to depend upon his establishing what was necessary to entitle him to a verdict upon the count for money had and received. The testimony tending to show authority or ratification, was weighed and found wanting. After this, there was no occasion to pass upon the construction of the notes, any more than there was in *Parsons* v. *Monmouth*, 70 Maine, 264.

That any negotiable paper, made by the officers of a town in the transaction of its ordinary business, not proceeding under special authority conferred by some statute, will be subject, even in the hands of a *bona fide* indorsee, to all equitable defences that might be made against the original promisee, is well settled in this State, as appears in the case last named, and the cases there cited.

And the plain doctrine of *Bessey* v. *Unity*, 65 Maine, 342, and *Parsons* v. *Monmouth*, is that the holder of such paper who has lent money upon the representation of town officers that it was wanted for municipal use, must go farther and show the appropriation of the money lent to discharge legitimate expenses of the town, unless he can show that such officers were specially authorized, by vote of the town at a legal meeting, to effect the loan. The case at bar seems to have been tried in careful conformity with these rules. The fallacy of the greater part of the

defendants' argument upon the exceptions consists in ignoring the fact that "the notes were laid out of the case."

It is strongly implied in the two cases last above cited that money thus advanced and shown to have been actually appropriated to the discharge of legal liabilities of the town, would be held recoverable in an action for money had and received against the town. We see no good reason to excuse the town from refunding it when it has been actually thus appropriated. The plaintiff by such proof brings his case fully within the principles that govern the action for money had and received. He shows his money received and appropriated by the agents of the town to the legitimate use of the town, and in such case the want of an express promise to repay it will not defeat the action. The law will imply a promise, sometimes, even against the denial and protestation of the defendant. *Howe* v. *Clancey*, 53 Maine, 130.

It is the payment of the lawful debts of the town by its own agents with the plaintiff's money which constitutes the cause of action.

To allow a recovery by the plaintiff of whatever sum he can show has thus enured to the benefit of the town, is a more compendious mode of settling the controversy than the English method of subrogating the lender of the money to the rights of the perhaps numerous corporation creditors, who have been paid with the funds procured without authority, a mode of doing justice which manifestly tends to a multiplicity of suits, when, for aught we see, the proper result may be reached, at all events with the assistance of an auditor, in a single action.

Looking at the issue which was in fact presented to the jury, it will be seen that defendants' counsel is in error in supposing that if the presiding judge had ruled that if the notes were *in form* the individual notes of Brown, "that would have ended the conflict and the plaintiff would have been nonsuited."

The plaintiff offered testimony tending to put his case upon another footing than that of *Parsons* v. *Monmouth*, and hence all the evidence which had a tendency to show that plaintiff's money was used for the payment of some legitimate indebtment

of the town was strictly relevant; and the instructions (of some of which the defendants complain) were appropriate to direct the attention of the jury to that which was the chief subject of inquiry. Thus it is obvious that the deficiency in the town treasurer's accounts was of importance only upon the question, what was done with the plaintiff's money, and as it might bear upon that question, the presiding judge called the attention of the jury to it. The defendants surely have no cause of complaint that he did so, nor that he required the jury carefully to ascertain such facts as were necessary to determine whether the old notes which (it was claimed) were paid with this money were barred by the statute of limitations, and whether, if the plaintiff's money was paid to discharge them, they represented not only just but legal claims against the town.

The vital question of fact whether the plaintiff's money had actually been applied by the town officers to the extinguishment of legal claims against the town was settled by the jury against the defendants. The jury found that it was so applied. The testimony produced by the plaintiff, if believed, justified the finding, and there is nothing in its character or in that of the accounts produced which decisively stamps it as untrue. There is an apparent error of a few dollars in the reckoning of interest. When the plaintiff has cured this by a remittitur, the entry will be.

*Motion and exceptions overruled.*

APPLETON, C. J., WALTON, VIRGIN, LIBBEY and SYMONDS, JJ., concurred.