LIPMAN BROTHERS, INC.

*vs.*

HARTFORD ACCIDENT & INDEMNITY CO.

Penobscot.    Opinion, September 9, 1953.

*Abraham M. Rudman,*
*Gerald Rudman,* for plaintiff.

*James E. Mitchell,*
*John W. Ballou,* for defendant.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, WILLIAMSON, TIRRELL, JJ. MURRAY, A. R. J., did not sit.

MERRILL, C. J. On exceptions by the plaintiff to the rejection of the report of a referee. The plaintiff was a processor and dealer in poultry, to wit, chickens. It operated a processing plant in Bangor in which it had about fifty employees. At this plant it received live chickens, killed and dressed the same. Save for minor local sales, it shipped the dressed poultry to New York. The defendant issued to and covered the plaintiff by a comprehensive Dishonesty, Disappearance and Destruction Policy, so-called, which was in force during all times material to the claim here in question. By said policy the plaintiff was insured for loss not exceeding $22,500.00 as follows:—

"I   Employee Dishonesty Coverage — Form A
    Through any fraudulent or dishonest act or acts, committed anywhere by any of the Employees acting alone or in collusion with others, including loss of Money and Securities and other property through any such act or acts of any of the Employees, and including that part of any inventory shortage which the Assured shall conclusively prove to have been caused by the fraud or dishonesty of any of the Employees; provided that the Company's aggregate liability as to all Employees shall not exceed the Limit of Liability applicable to this Insuring Agreement I, subject, however, to the provisions of Section 9.

    Loss Caused by Unidentifiable Employees

    If a loss is alleged to have been caused by the fraud or dishonesty of any one or more of the Employees and the Assured shall be unable to designate the specific Employee or Employees causing such loss, the Assured shall nevertheless have the benefit of this Insuring Agree-

> ment I, provided that the evidence submitted reasonably (in case of inventory shortage, conclusively) establishes that the loss was in fact due to the fraud or dishonesty of one or more of the said Employees, and provided further that the aggregate liability of the Company for any such loss shall not exceed the Limit of Liability applicable to this Insuring Agreement I."

The plaintiff claimed that it sustained loss by theft by its employees between December 6, 1950 and February 6, 1951 of 5,449 chickens of the value of $1.332 each, and of the total value of $7,258.07. Against this sum it credited $203.-89, the amount of salaries earned and withheld from the employees it alleged participated in the theft, leaving a balance claimed of $7,054.18. Failing to arrive at a settlement of this claim, the plaintiff brought an action on the policy against the defendant insurer returnable to the Superior Court for the County of Penobscot at the January Term 1952. At this term the defendant entered a plea of the general issue with a brief statement setting forth eight specifications of defense thereunder. So far as material to the record before us, we need but consider the issues offered under the general issue and the seventh specification of defense which is as follows:—

> "That by the terms of said policy of insurance the burden is upon the plaintiff in proving or establishing any inventory shortage, loss by theft, dishonesty or misappropriation by employees, or other loss, to 'conclusively prove' such loss and to 'conclusively prove' that such loss has been caused by the fraud, dishonesty, theft or misappropriation of an employee or employees of the plaintiff; and the defendant avers that the plaintiff lacks, cannot furnish and has not furnished the defendant, or anyone else, such 'conclusive proof' of loss, nor any proof thereof, for that matter:"

The case was referred under rule of court with right of exceptions as to matters of law reserved by both parties. The referee found for the plaintiff and made a specific finding that,

> "In this case the evidence establishes that there were stolen by the employees of the plaintiff the following: 5449 chickens, not dressed, of the value of $1.16 each $6,320.84 from which is deducted labor of employees 203.89 Balance $6,116.95 Interest from date of writ 269.15 Total $6,386.10. Judgment is for the plaintiff for this amount."

The referee's report with the evidence before the referee was presented to the Superior Court at the September Term 1952. Motion for acceptance of the report, and written objections to its acceptance were filed at that term. In vacation the justice presiding at the September Term rendered his decision rejecting the report. To this action of the presiding justice exceptions were taken and allowed and the case is before us on these exceptions.

By its objections to the acceptance of the referee's report the defendant alleged as the grounds thereof that there was error in law by the referee (1) because there was no evidence in the record of the case to support the findings of fact made by the referee, which findings necessarily form a basis of the referee's conclusions and report; (2) the report is erroneous in law because upon all of the testimony in the case there was no evidence to support the referee's findings quoted above in this opinion. In addition to certain objections which are immaterial to the issues now before the court, numbered (3), (4) and (5), the defendant also objected to the report upon the ground that "(6) upon all of the testimony in the case, the plaintiff did not sustain the burden which was upon it of proving or establishing an inventory shortage, loss by theft, dishonesty or misappropriation by employees, or other loss within the pro-

visions of said policy of insurance, nor did the plaintiff (as required by said policy) 'conclusively prove' that any loss to it within the terms of said policy had been caused by any fraud, dishonesty, theft or misappropriation of an employee, or employees, of the plaintiff." The defendant further objected to the report "(7) Because the said report is error as a matter of law for the reason that, upon all of the testimony in the case, said report was necessarily based upon inadmissible evidence to the legal detriment of the defendant, without which inadmissible evidence, as a matter of law, and for that matter, so the defendant contends, even with it, the said Referee could not possibly, as a matter of law, have found for the plaintiff, especially in the following particulars." Thereafterwards followed a specification of the alleged inadmissible testimony which the written objections and the record show was admitted over objection and subject to exception noted.

This testimony consisted of warrants issued by the Bangor Municipal Court, all dated February 10, 1952, charging (a) William Carl Wilson, Fred Leteure and Edward A. Nelson with the larceny of 25 chickens belonging to the plaintiff on February 1, 1951; (b) Earl A. Drew with the larceny of 2 chickens belonging to the plaintiff on December 22, 1950; (c) Carl R. Drew with the larceny on January 10, 1951 of 1 chicken belonging to the plaintiff; (d) Floyd Drew with the larceny of 1 chicken belonging to the plaintiff on December 20, 1950; that to these several warrants Edward A. Nelson, Earl A. Drew, Carl R. Drew and Floyd Drew entered pleas of guilty and that neither of them took appeals from the sentences imposed (these several respondents all being employees of the plaintiff during the time when said larcenies were alleged to have been committed).

The admission of this evidence over the defendant's objection and noted exception constituted legal error. This error was sufficiently specified in the written objections to

the acceptance of the referee's report under Rule 21, and justified its rejection by the Justice of the Superior Court presiding.

To understand the evidence hereinafter discussed and the full force and effect of the foregoing inadmissible testimony, it is necessary to digress and to describe in outline the procedure by which chickens were processed by the plaintiff.

The chickens were received at the plant in ordinary wooden chicken crates. They were removed from these, counted, weighed, and placed alive in metal coops called batteries, and there fed and watered. The chickens were taken from the batteries and hung alive by the feet upon a conveyor. On the conveyor, which moved along, they passed the killer. After being killed they were immersed in a hot bath to loosen the feathers, were plucked mechanically and finished by hand, cropped, weighed, sorted, cooled, packed, and placed in refrigerated trucks for transportation.

As the birds were being plucked the wet feathers fell to the floor and were from time to time gathered in a pile. These feathers were later wheeled out by barrow and dumped in a truck operated by one Frederick Leteure who carted them away to the city dump.

On either the 8th or 9th of February, 1951, the date being immaterial, Mr. Bernard Lipman, Treasurer of the plaintiff corporation, was present in the dressing plant. He discovered a bird or two in the barrow and upon examination more in the feathers, some 34 in all. These were pretty well processed, marketable chickens. Leteure was then engaged in the process of trucking the feathers away, and was at that time making a load. Lipman contacted the police. They met the truck driven by Leteure at the dump and found some 75 marketable birds amongst the feathers. Over sea-

sonable objection the referee admitted evidence of the conviction of Leteure of the larceny of the chickens on a warrant alleging said larceny to have been committed on February 9. He later struck out the evidence of the conviction of Leteure on the ground that the larceny of which he was convicted was subsequent to the period in which the losses sued for were alleged to have occurred. It further appeared in evidence that, as the plaintiff had recovered the chickens discovered amongst the feathers in marketable condition, it made no claim against the defendant therefor.

After discovering the chickens amongst the feathers and the arrest and conviction of its employees, the plaintiff sought to ascertain the number of chickens, if any, it had lost by theft in the period December 6, 1950 to February 6, 1951. It arrived at the number of chickens it claimed were stolen by deducting from the number of chickens it claimed it had received at its processing plant during the period the number of chickens sold during the same period, and making allowance for what it claimed was the average loss during processing. It had no records of average loss. Therefore, it kept an account of the actual loss during processing for a test period of from one to two weeks and worked out a loss ratio. It applied this loss ratio to the number of chickens processed from December 6, 1950 to February 6, 1951 (approximately 400,000) and computed the normal loss between those dates at 1121 chickens.

We now return to the legal questions presented by the admission of evidence of the conviction of larceny of chickens by employees of the plaintiff upon their several pleas of guilty.

It is well settled that a conviction in a criminal case, as such, is not evidence in a civil case against the convicted person to establish the facts on which it is rendered. *State*

*of Maine* v. *Fitzgerald et al.,* 140 Me. 314 at 318. Even though such conviction is admissible in an action *against the party convicted* when based on a plea of guilty, it is the admission by the plea, not the fact of the conviction which is evidence. *State* v. *Fitzgerald et al., supra.* See also *Mead* v. *City of Boston,* 3 Cush. 404, 407. In that case Chief Justice Shaw said:—

> "The admission, in a civil action, of a conviction on an indictment founded on a plea of guilty, is not an exception to this rule (that the conviction is not evidence of the facts upon which it is based). That is received, not as a judicial act, having the force and effect of a judgment, but as a solemn confession of the very matter charged in the civil action. 1 Greenl. Ev. § 537."

In the section just cited by Chief Justice Shaw in *Mead* v. *City of Boston,* Greenleaf said:—

> "Upon the foregoing principles, it is obvious that, as a general rule, a verdict and judgment in a *criminal case,* though admissible to establish the fact of the mere *rendition* of the judgment, cannot be given in evidence in a civil action, to establish *the facts on which it was rendered.*"

The same author in a prior section, to wit, Section 527 a. stated:—

> "A record may also be admitted in evidence in favor of a stranger, against one of the parties, as containing a *solemn admission,* or judicial declaration by such party, in regard to a certain fact. But in that case it is admitted not as a judgment conclusively establishing the fact, but as the deliberate declaration or admission of the party himself that the fact was so. It is therefore to be treated according to the principles governing admissions, to which class of evidence it properly belongs. * * * And on the same ground, in a libel by a wife for a

> divorce, because of extreme cruelty of the husband, the record of his conviction of an assault and battery upon her, founded upon his plea of 'guilty' was held good evidence against him, as a judicial admission of the fact but if the plea had been 'not guilty', it would have been otherwise."

As authority for the statements relative to the admission and rejection of the evidence in divorce actions Greenleaf cites *Bradley* v. *Bradley,* 11 Me. 367, and *Woodruff* v. *Woodruff,* 11 Me. 475. That even a plea of guilty by a party to a civil action is only an admission and not conclusive upon him in the civil case is well illustrated by the case of *Karlen* v. *Hadinger* quoted with approval in *State of Maine* v. *Fitzgerald, supra.*

The underlying reason for the admissibility of the conviction upon a plea of guilty being that it is an admission, its admissibility in civil suits is therefore governed by the law relative to admissions. This law conclusively demonstrates that the admission of the evidence of the convictions of the several employees of the plaintiff on their several pleas of guilty was erroneous. The employees were not parties to the present suit. The criminal proceedings in which the pleas were entered and the convictions were had, were *res inter alios acta* in their entirety. Neither party to the criminal prosecution is a party to this action. The admissions of the employees by their pleas cannot be construed to be admissions of either of the parties to the instant suit. Neither the convictions as such nor the admissions by the pleas were competent evidence in this action to prove loss by larceny by employees of the plaintiff. It would seem unnecessary to multiply authorities, but see:—30 Am. Jur. 1002 et seq., Secs. 289-294, inclusive, and annotations. See notes 31 A. L. R. 261, 57 A. L. R. 504, 80 A. L. R. 1145, 87 A. L. R. 1262, 31 L. R. A. N. S. 670, 21 Ann. Cas. 1184, and 7 Encyc. of Evidence, Sec. IV, Par. 1-5, pp. 850-852.

We would not leave this subject without calling attention to the cases of *Anderson* v. *Anderson*, 4 Me. 100, and *Randall* v. *Randall*, 4 Me. 326. In these cases, which were actions for divorce because of adultery by the husband, the court received evidence of the conviction of the husband of adultery as proof of that fact. Although these cases are in apparent conflict with the rule that the conviction of a person in a criminal case cannot be used as evidence of the facts upon which it is based in a civil action, if not overruled in effect by *Bradley* v. *Bradley* and *Woodruff* v. *Woodruff*, *supra*, they may be and have been explained as exceptions thereto peculiarly applicable in divorce actions. See *Tucker* v. *Tucker*, 137 Atl. (N. J.) 404 and the cases cited therein, and especially a discussion of the rule in divorce cases in the extract from Bishop on Marriage, Divorce, and Separation, Section 1406 as quoted therein.

The reception of the evidence objected to relative to the conviction of the employees of the plaintiff, as above stated, was legal error. Nor is this error aided by the fact that the referee announced that he was receiving the evidence or at least a part thereof *de bene*. It is often necessary to receive evidence, which standing alone would be inadmissible as immaterial, as a preliminary step in proving a material fact. Such evidence is often received upon the assurance of counsel that evidence will later be introduced showing its materiality or that it is introduced as one step in proving a material fact. In such instances the court may receive such testimony *de bene esse* or, in the contractive form more commonly used, *de bene*. The

> "Phrase 'de bene esse' or its contraction 'de bene,' with reference to admission of evidence, properly refers to doctrine of conditional relevancy, and is most accurately expressed by word 'conditionally,' so that admission of evidence de bene esse properly means that admission is conditioned upon sub-

sequent showing of facts necessary to demonstrate admissibility. Doe v. Lucy, 139 A. 750, 752, 83 N. H. 160." 11 Words & Phrases, 185.

This doctrine and its limitations have been recognized and stated by this court in *Mussey* v. *Mussey,* 68 Me. 346, 349 et seq. In that case we said:—

"We have not overlooked the fact that in the trial of causes evidence apparently irrelevant often is, and, from the necessity of the case, must be admitted upon the statements of counsel that its pertinency will be made to appear by evidence afterward to be produced. But when this is done counsel must see to it at their peril that the connecting link in the chain of evidence is supplied; for, if this is not done, and the evidence was seasonably objected to, its admission will be error, and cause for a new trial. To hold otherwise would virtually repeal the rule of law excluding irrelevant evidence.

The efforts to get before juries evidence which can have no other effect than to create in their minds some improper prejudice or bias, are constant, persistent, and too often successful. It is a practice which ought not to be encouraged. To hold that evidence apparently irrelevant may be received upon the statement of parties or their counsel that its relevancy will afterward be made to appear, and then allow it to remain in, when no such evidence is produced, and then hold that no peril is thereby incurred, would greatly encourage a practice which is already an existing evil, and virtually repeal a valuable and fundamental rule of the law of evidence.

We do not mean to say that a new trial should be granted for every inadvertent or accidental admission of irrelevant evidence. Such is not the law. If the court can see that the irrelevant evidence was perfectly harmless, — that it could not by any

possibility have had any improper influence upon the jury — a new trial may properly be refused. But when, in addition to being irrelevant, it is of such a character as to be liable to mislead, confuse, or improperly influence the jury, a new trial should be granted. And such we understand to be the well settled rule of law. *Ellis* v. *Short*, 21 Pick. 142, *Farnum* v. *Farnum*, 13 Gray, 508. *Brown* v. *Cummings*, 7 Allen, 507. *Ellingwood* v. *Bragg*, 52 N.H. 488.''

There is a further limitation upon the rule of admitting evidence *de bene esse.* It is well stated in Jones on Evidence, Vol. 3, Sec. 812 at page 1496:—

"The rule under discussion should be limited to cases wherein the objection to the testimony relates mainly to its relevancy to the issue, and does not extend to cases in which the objection is to its legal incompetency to prove the fact. 'In the one case, there is a fact proved which subsequent developments may show to be relevant to the issue, but in the other, there has been no legal proof of the fact itself, and when made relevant it would still be incompetent.' "

See also *Wilson* v. *Barkalow,* 11 Ohio St. 470 at 474.

This distinction stated by Jones and the case of *Wilson* v. *Barkalow, supra,* may be aptly illustrated with respect to evidence relating to convictions of crime. In the instant case, the referee when the first warrant upon which one of the employees was arrested was offered, admitted the same *de bene.* If the ultimate conviction of the employee upon a plea of guilty was a fact material to the issue and legally competent to prove theft of the plaintiff's property *in this case,* as the referee evidently believed, it would be proper to admit the warrant *de bene.* It was one of the steps in proving the conviction on such plea of guilty. On the other hand, if the ultimate fact of the conviction, even upon a

plea of guilty, as in this case, was not relevant to the issue and was legally incompetent proof of the larceny of the plaintiff's property by the convicted employee, it would be improper to admit evidence of any of the preliminary facts to prove the ultimate fact of conviction on plea of guilty. In other words, if the ultimate fact sought to be established is legally incompetent as proof of any issue in the case, it is entirely improper to admit evidence of the preliminary facts leading up thereto *de bene esse*.

When the party offering evidence which is received *de bene* fails to furnish the necessary connecting links a distinct ruling which lays the defective evidence out of the case will leave the objecting party no substantial cause for complaint. *Billings* v. *Monmouth*, 72 Me. 174 at 177. This rule, of course, is subject to the general limitation that evidence improperly received may be so prejudicial that striking it out, coupled with an instruction to disregard the same will not cure its wrongful admission. Furthermore, evidence may be received *de bene* upon a condition expressed so plainly by the court at the time of its admission that if the condition is not later complied with, this court will presume that the jury understood the matter and that they actually did disregard the evidence. See *Bangor* v. *Brunswick*, 30 Me. 398.

The procedure with respect to, and effect of the admission of evidence *de bene* must not, however, be confused with that obtaining with respect to its *exclusion de bene*. In the former case the evidence has been received and the burden of overcoming the effect of its wrongful admission, if it was objected to, is upon the party introducing it. *Mussey* v. *Mussey, supra.* In the latter case, when the evidence has been excluded *de bene* the one offering it has an opportunity to offer it again and obtain the benefit thereof. The rule

with respect thereto is well stated in *Dudley* v. *Paper Co.*, 90 Me. 257, 261 :—

> "But we rest our decision upon the ground that a postponement is not an exclusion; that when the admissibility of evidence is reserved for further consideration, and it is not again offered, and the attention of the court is not again called to it, an exception can not be sustained on the ground that it was excluded. We hold that in such cases postponement is not exclusion, and can not be so treated."

To the same effect see *Hotchkiss* v. *Coal & Iron Company*, 108 Me. 34, 62.

Admission of evidence *de bene*, when properly allowed, is a necessary step in the regular, orderly and efficient conduct of the trial of cases. However, it is neither to be resorted to by the court as a device to avoid responsibility for erroneous rulings, nor employed by counsel as the means to get inadmissible testimony before the jury without suffering the consequences thereof.

Having determined that the admission of the evidence of the convictions of the several employees of the plaintiff could not be sustained, as against the defendant, either on the ground that they constituted a judicial determination of the facts upon which they were based, or as admissions by the convicted persons, their admission by the referee constituted error in law. This error in law is set forth in the written objections as one of the grounds for rejecting the report.

The mere fact that irrelevant evidence is admitted over objection and subject to exception in and of itself does not require the vacating of a decision against the party objecting to the reception of the evidence, be the trier of fact jury, judge or referee.

Before a decision will be disturbed for the erroneous reception of evidence it must appear that the objecting party was prejudiced thereby.

In the case of a jury trial the test of whether or not the erroneous admission of testimony is prejudicial is well stated in the extract above quoted from *Mussey* v. *Mussey*: "If the court can see that the irrelevant evidence was perfectly harmless, — that it could not by any possibility have had any improper influence upon the jury — a new trial may properly be refused. But when, in addition to being irrelevant, it is of such a character as to be liable to mislead, confuse, or improperly influence the jury, a new trial should be granted." This same rule is well stated in 3 Jones on Evidence, Sec. 896. In that section the author states, among other things,

> "Doubtless, if the trial court has admitted irrelevant or incompetent evidence which has had a tendency to prejudice the minds of the jury or to mislead them, a new trial should be granted. So long as the chances are equal that it may have had some effect one way or the other, the aggrieved party is entitled to the benefit of the principle that irrelevant testimony should be shut out from the jury."

In *Farmers' & Manufacturers' Bank* v. *Whinfield*, 24 Wend. 419, 427, the court said:—

> "But so long as he insists upon it, he is entitled to his neat point, on error, that the testimony was irrelevant, whether the court are disposed to guess it may have weighed but a feather or even made for the party excepting. If they see that it must necessarily have tended in his favor; if it made for him in its own nature, or could not possibly prejudice his case, that might be an answer; but so long as the chance is equal that it may have had some

effect one way or the other, the party is entitled to the benefit of the principle that irrelevant testimony should be shut out from the jury."

See also *Hoberg* v. *State,* 3 Minn. 262.

On the other hand, when a case is heard by the *court* without the intervention of a jury, a party is not aggrieved by the reception of inadmissible testimony if there be sufficient legal testimony to authorize or require the court to render the decision made. "Inadmissible evidence received by the court, hearing the case without a jury, furnishes no ground for exception unless it appears his decision was based in whole or in part upon such evidence." *Jolovitz* v. *Redington & Co., Inc.,* 148 Me. 23, 30. This principle has recently been reiterated in *Knapp, Appellant,* 149 Me. 130, 99 Atl. (2nd) 331, not yet reported. See also 3 Jones on Evidence, Sec. 896, *supra.*

The basis for this distinction between jury and court cases lies in the fact that a court learned in the law is presumed to render its decision on the evidence in the case which is legally admissible even though inadmissible testimony be received. This presumption must be rebutted before the reception of such evidence by the court will be deemed prejudicial.

Referees, though in fact they often are, are not required to be learned in the law. Although a referee to whom a case is submitted under a rule of court is a tribunal selected by the parties to hear and determine the cause, he is not a court. We said in *Newell* v. *Stanley,* 137 Me. 33, 36:—

"Referees appointed under a rule of court, by agreement of the parties, undoubtedly act judicially, but they are not the court. They constitute a special tribunal of the parties' own choosing, whose report must be accepted by the court before any judg-

ment can be rendered thereon. *Perry* v. *Ames, Appellant,* 112 Me., 202, 91 A., 931; *Staples* v. *Littlefield,* 132 Me., 91, 167 A., 171; *Kliman* v. *Dubuc,* 134 Me. 112, 182 A., 160."

The finality of the decision of a referee in the absence of a reservation of the right of exception as to matters of law is based upon the agreement of the parties and the selection of the referee as the tribunal to hear the cause, not upon any presumption of legal learning on his part. When, therefore, the right of exception as to matters of law is reserved and the referee receives inadmissible testimony, there is no presumption that he decided the case upon only so much of the testimony as is legally admissible. Whether or not his reception of inadmissible testimony is prejudicial, unless it clearly appears that he *did not* base his decision at least in part thereon, should be decided on the same principles as those applied in jury trials in determining whether or not the admission of inadmissible testimony is prejudicial. Such is the effect of reserving the right of exception as to matters of law on the reception of inadmissible testimony before referees.

In the instant case it is immaterial whether we apply the rule applicable to hearings before a court or jury to the reception of the evidence respecting the convictions of the employees of the plaintiff of the larcenies of its chickens.

One swallow does not make a summer. Neither does one frustrated attempted theft of 109 chickens, on a single occasion, even though committed by an employee or employees of the plaintiff, establish that an invoice loss of 5,449 chickens sustained over a period of 2 months was occasioned in its entirety by the theft or dishonesty of plaintiff's employees. The referee must have relied upon the convictions of the several employees to reach the result at which he arrived. This testimony was both irrelevant and legally in-

competent. The reception of the inadmissible testimony respecting the convictions was clearly prejudicial.

The action of the presiding justice in rejecting the referee's report can be sustained upon any or all of the written grounds of objection numbered (1), (2), and (7) *supra*. This being true, it becomes unnecessary for us to consider the 6th ground of objection or to determine the effect of the phrase "conclusively prove" contained in Form A hereinbefore quoted. As before stated, objections (3), (4) and (5) have become immaterial to the issue now before the court.

We held in *Water District* v. *Maine Turnpike Authority,* 145 Me. 35 at 55:—

> "If a report be rejected, and the rejection can be sustained on *any ground specifically set forth in the written objections, exceptions to the rejection cannot be sustained even though an erroneous ground be assigned for the rejection.*"

If such be the case when an erroneous reason for rejection is stated, surely under the same conditions the exceptions to the rejection cannot be sustained when the justice presiding assigns no reason therefor.

The exceptions must be overruled, and the case remanded to the Superior Court.

*Exceptions overruled.*

*Case remanded to Superior Court.*