193 So.2d 115 (1966)
GOTCHER ENGINEERING & MANUFACTURING COMPANY, Inc.
v.
UNITED STATES FIDELITY & GUARANTY COMPANY.
No. 44178.
Supreme Court of Mississippi.
December 19, 1966.
Sullivan, Dunbar & Smith, Clarksdale, for appellant.
Brewer, Brewer & Luckett, James E. Upshaw, Clarksdale, for appellee.
JONES, Justice.
Appellant sued appellee in the Circuit Court of Coahoma County, Mississippi, and from a judgment of that court sustaining a demurrer to the declaration, and, upon appellant refusing to plead further, dismissing the case, it comes here. We affirm.
Appellant manufactured and sold agricultural machinery, equipment, and supplies. In the furtherance of its business it maintained a warehouse in the City of Plainview, Texas for the storing of its products. At the time complained of there was in force an insurance policy issued by appellee and termed, "Comprehensive Dishonesty, Disappearance and Destruction Policy," under the terms of which each employee was covered to the extent of $10,000.
The declaration alleged that at the Texas warehouse mentioned there were two employees, Dale and Bill Price, brothers, who were the only employees of plaintiff (except the president of the company) having access to the warehouse and its contents. That, when said brothers were employed, a physical inventory showed the warehouse contained products of the aggregate value of $26,923.79. That from the date of the employment (February 20, 1962) until August 31, 1963, plaintiff shipped its products *116 to the warehouse in the amount of $29,999.69; re-shipped from the warehouse $42,461.22 in merchandise; and, there should have been left in said warehouse an inventory aggregating $14,462.26 in value. That on September 5, 1963, an inventory was taken which revealed only $791.13 in aggregate value accounted for, resulting in a shortage of $13,671.15.
It was charged that the Price brothers had exclusive authority and control over said warehouse.
It was also alleged, after discovering said shortage, that an investigation revealed said employees, prior to August 31, 1963, sold one of the missing items, accepting the purchaser's check for $1,010 and appropriating same to their own use. It was then charged these circumstances create a probable and reasonable conclusion that the remaining shortage was also fraudulently and dishonestly appropriated by said employees. It charged also that the liability for the item sold by said employees had been admitted by the defendant.
Attached to the declaration was what is marked as Exhibit B, "Items Missing from Plainview, Texas Warehouse." This exhibit consisted of six pages in which various items were listed, with the quantity of each item and the value. There were items of value ranging from ten cents, or less, to $2,000 on one or two. The quantity of each item was given, and it ran from one to 900.
The insuring clause of the policy, which was attached to the declaration as an exhibit, provided, in part, as follows:
"The Company, in consideration of the payment of the premium, and subject to the Declarations made a part hereof, the General Agreements, Conditions and Limitations and other terms of this Policy, agrees with the Insured, in accordance with such of the Insuring Agreements hereof as are specifically designated by the insertion of an amount of insurance in the Table of Limits of Liability, to pay the Insured for:
INSURING AGREEMENTS

Employee Dishonesty Coverage  Form B Loss of Money, Securities and other property which the Insured shall sustain through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others, the amount of insurance on each of such Employees being the amount stated in the Table of Limits of Liability applicable to this Insuring Agreement."
Another provision of the policy under the head, "Exclusions," reads:
"Section 2. This Policy does not apply:
(a) to loss due to any fraudulent, dishonest, or criminal act by any Insured or a partner therein, whether acting alone or in collusion with others;
(b) under Insuring Agreement 1 to loss, or to that part of any loss, as the case may be the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation; provided, however, that this paragraph shall not apply to loss of Money, Securities or other property which the Insured can prove, through evidence wholly apart from such computations, is sustained by the Insured through any fraudulent or dishonest act or acts committed by any one or more of the Employees;"
The question involved is whether the declaration brought the case without the provisions of Section 2(b). It will be noted the declaration charges directly that the employees misappropriated only one item. The other items are charged or alleged to be missing because they were undisclosed by an inventory. The loss is only shown by the difference in inventory. The only way in which the employees are sought to be charged with fraud and dishonesty is by alleging that they were the only employees (except the president) who had access to said warehouse, and that their control thereof was exclusive.
*117 In Fort Smith Tobacco & Candy Co. v. American Guaranty & Ins. Co., 208 F. Supp. 244 (W.D.Ark. 1962), there was involved an insurance policy of the same type and with exactly the same insuring clause and the same exclusionary clause. The loss there involved cigarettes, drugs and sundries, appliances, miscellaneous items, Camp Chaffee account, and cash collections. The total claim was over $26,000. The fact that a loss had occurred was discovered September 15, 1959, but the plaintiff did not know exactly when it occurred, and the extent thereof was not known until an audit was completed October 23, 1959. One Hard-castle was charged as the employee whose fraudulent or dishonest act caused the loss. He had repaid nearly $3,000. There was no claim that any employee other than Hard-castle was guilty. Hard-castle denied any responsibility except in connection with cigarettes. This is a long opinion, and we only quote excerpts therefrom, to-wit:
"The plaintiff does not contend that the policy is ambiguous in any respect.
"In 29 Am.Jur., Insurance, Sec. 260, p. 644, it is said:
"`The rule of construction favorable to the insured does not conflict with the rule that contracts of insurance should be construed so as to carry out the true intentions of the parties, since it applies only when there is ambiguity so that the intent is not clear. Conversely stated, the rule of strict construction against the insurer does not apply where the language used in the policy is so plain and unambiguous as to leave no room for construction * *. Furthermore, the rule of strict construction against the insurer does not authorize the distortion or perversion of the language used in an insurance contract, nor does it furnish any warrant for creating an ambiguity where none otherwise exists, and the rule that the language of an insurance policy is to be construed most strongly against the insurer is no justification for giving one meaning to a term therein when defining it for the benefit of the insured and another when it is invoked by the insurer.'" 208 F. Supp. at 256-57.
* * * * * *
"Fraud is never presumed, and under the provisions of the policy sued upon, the plaintiff cannot recover for any claim based upon inventory computation, but the policy does not provide that the plaintiff is precluded from introducing inventory computations. However, before it can recover it must produce `evidence wholly apart from such computations' which `reasonably proves that the loss was in fact due to the fraud or dishonesty of one or more of the said employees.'" 208 F. Supp. at 257-58.
Finally, the holding of the Court insofar as it affects the present case is summarized in Headnotes 2 and 5, which read as follows:
"2. * * * Insured had the burden to prove its right to recover under the terms of a comprehensive dishonesty, disappearance and destruction policy for loss of property sustained through the fraudulent or dishonest act of the insured's employee.
"5. * * * Under terms of a comprehensive dishonesty policy for loss of property sustained through the dishonest act of insured's employee, mere negligence or carelessness or fact that insured property was missing would not be sufficient to hold the insurer under the policy."
General Truck Sales, Inc. v. American Fire & Cas. Co., 100 So.2d 202 (Fla. 1958), was a case involving a suit on an employee's fidelity bond in which summary judgment was entered and the part thereof applicable to the instant case is as follows:
"The pleadings, depositions and affidavits may not present an explanation thoroughly satisfactory to the plaintiff, but they do reveal that plaintiff has no *118 basis for its claim, other than the report of its auditors that book entries representing certain sums of money purportedly received by the corporation are not traceable to the bank accounts. Such evidence would not support a recovery by the plaintiff. Hartford Acc. & Indem. Co. [of Hartford, Conn.] v. Hattiesburg Hdw. Stores, Miss., 49 So.2d 813, [23 A.L.R.2d 1053.] See 50 Am.Jur., Suretyship, § 361, and cases cited therein; also 16 A.L.R. 1499, supplemented in 56 A.L.R. 968." 100 So.2d at 203.
The Supreme Judicial Court of Maine had before it Lipman Bros., Inc. v. Hartford Accident & Indemnity Co., 149 Me. 199, 100 A.2d 246 (1953), in which a similar bond, although not worded exactly as that here sued upon, was involved, and the holding of the Court is succinctly stated in Headnote 23, as follows:
"In action against insurer on comprehensive dishonesty, disappearance, and destruction policy for value of 5,449 chickens allegedly stolen by insured's employees, evidence of one frustrated, attempted theft of 109 chickens on a single occasion, even though committed by one or more of insured's employees, was not sufficient to establish that invoice loss of 5,449 chickens sustained over two month period was occasioned in its entirety by theft or dishonesty of insured's employees."
In 1951, our own Court decided the case of Hartford Accident & Indemnity Co. of Hartford, Conn. v. Hattiesburg Hardware Stores, Inc., 49 So.2d 813 (Miss. 1951), and, while it was alleged that the employee "was charged with the exclusive control and management of the properties," it was there held:
"Proof of the disappearance of goods or property entrusted to the custody of an employee, without further proof connecting the employee with the disappearance, is not sufficient to warrant recovery on a fidelity bond providing against loss on account of the fraud or dishonesty of the employee. 50 Am. Jur., 1141; Salley v. Globe Indemnity Co., 133 S.C. 342, 131 S.E. 616, 43 A.L.R. 971." 49 So.2d at 823.
We find the provisions of the policy not ambiguous; that the allegations of the declaration failed to take the case out of the exclusionary provision; that the lower court was correct in sustaining the demurrer, and the case is affirmed.
Affirmed.
GILLESPIE, P.J., and RODGERS, PATTERSON and INZER, JJ., concur.