THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ELESTER RICHARDSON, Defendant-Appellant.

(No. 58633; )

First District (1st Division)—August 5, 1974.

Paul Bradley and Howard Augustus, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. JUSTICE HALLETT delivered the opinion of the court:

After a bench trial, the defendant was convicted of reckless homicide in connection with an incident in which his automobile veered onto a sidewalk, bounced off the side of a bridge, hit two boys, killing one of them, hit two vehicles and came to a stop after colliding with a large "Be-Mac" truck. He was sentenced to 1 to 3 years in the penitentiary. At the trial, Officer Payne testified that the defendant, after being given the Miranda warnings by a Sgt. Marhoff, who did not testify at the trial, admitted going 65-70 miles an hour before the first impact. On appeal, the defendant contends, *inter alia:*

1. That Officer Payne's testimony that, in his presence, Sgt. Marhoff read the *Miranda* warnings to the defendant constituted hearsay and was improperly admitted over objection.

2. That the State must produce all material witnesses to the giving of such a warning or explain their absence and that, since such was not done here, Officer Payne's testimony as to the defendant's subsequent admission as to speed was improperly admitted over objection.

3. That the evidence is not sufficient to establish the defendant's guilt beyond a reasonable doubt.

We disagree with the first two of these contentions but concur in the third and therefore reverse without remanding.

The defendant first contends that to permit Officer Payne to testify as to what Sgt. Marhoff, in his presence and hearing, read to the defendant as his *Miranda* warnings violates the rule against hearsay. This is not correct and reflects a misunderstanding of what constitutes hearsay.

One of the clearest statements found in Professor Cleary's Hand-

book of Illinois Evidence (2d ed. 1963), where, in section 17.4, page 275, it is pointed out that:

"Hearsay does not encompass all extrajudicial statements but only those offered for the purpose of proving the truth of matters asserted in the statement. Therefore, when the mere making of the statement is the significant fact, hearsay is not involved."

To the same effect, it is said in 2 Jones on Evidence (5th ed.), section 271, page 521, that:

"§ 271. Extra-Judicial Statements Not Within the Rule. If a statement previously made out of court is offered in evidence through a witness or a writing, not for the purpose of establishing the truth of the matter stated, but merely for the purpose of establishing the fact that the statement was made, the evidence is admissible, if it is relevant, and it is not subject to the exclusionary impact of the hearsay rule."

In Hunter's Trial Handbook for Illinois Lawyers (3d ed.), section 309, at page 258, it is said:

"§ 309. Definition of Hearsay Evidence. Hearsay evidence includes only those statements made outside court which are offered to prove the truth of that which is asserted in the statement. Our Illinois Supreme Court has stated that 'the distinction between admissible testimony and that which is barred by the hearsay rule is well illustrated by Wigmore's example of the witness A testifying that "B told me that event X occurred.' If A's testimony is offered for the purpose of establishing that B said this, it is clearly admissible—if offered to prove that event X occurred, it is clearly inadmissible, for the only probative value rests in B's knowledge—and B is not present to be cross-examined." *People v. Carpenter*, 28 Ill.2d 116, 190 NE2d 728 (1963)."

To the same effect see McCormick's Handbook on Evidence (Hornbook Series), section 228, at page 463; VI Wigmore on Evidence (3d ed.), section 1766, at page 178.

And in *Northern Trust Co. v. Moscatelli*, 54 Ill.App.2d 316, 203 N.E.2d 447, this court, in affirming a decree, at page 332-333, said:

"The definition of 'hearsay' as developed in recent Illinois cases is that it is an out-of-court statement offered for the truth of the matter asserted. People v. Carpenter, 28 Ill2d 116, 190 NE2d 738; People v. DeMarco, 44 IllApp2d 459, 195 NE2d 213.

The letters from Rundall to Yolande were not offered for the truth of the matters asserted, but to show that Yolande had notice of the information contained therein. * * *"

■■ Officer Payne's testimony was offered not to prove the truth of the

*Miranda* warnings but only to prove that they were given before the defendant made a statement. We therefore conclude that the admission of this testimony did not violate the rule against hearsay.

■■ The defendant next contends that Sgt. Marhoff, who, according to the testimony of Officer Payne, in his presence and hearing, read the *Miranda* warnings to the defendant from a card, should have been produced by the State at the trial before the defendant's subsequent statements could be admitted. While it is well established in Illinois (*People v. Gavurnik* (1954), 2 Ill.2d 190, 117 N.E.2d 782; *People v. Wagoner* (1956), 8 Ill.2d 188, 133 N.E.2d 24; *People v. Jennings* (1957), 11 Ill.2d 610, 144 N.E.2d 612; *People v. Sammons* (1959), 17 Ill.2d 316, 161 N.E.2d 322; *People v. Dale* (1960), 20 Ill.2d 532, 171 N.E.2d 1; *People v. Sims,* (1961), 21 Ill.2d 425, 173 N.E.2d 494; *People v. Wright* (1962), 24 Ill.2d 88, 180 N.E.2d 689; *People v. Armstrong* (1972), 51 Ill.2d 471, 282 N.E.2d 712) that where it is contended that the defendant was beaten or otherwise coerced into a confession and a motion is made to suppress on that ground, the State must produce all material witnesses connected with the taking of the statement or explain their absence, no such contention is made here and no Illinois case has held that this rule applies to the giving of a Miranda warning and we do not do so now.

This brings us to the defendant's third contention that, even with Officer Payne's testimony, the evidence is not sufficient to establish the defendant's guilt beyond a reasonable doubt. We shall therefore consider the testimony in considerable detail.

Stanley Wirtschorek testified for the State that on October 21, 1971, at about 4:10 P.M., he was a passenger in a truck headed north on Cicero Avenue in Chicago; that the traffic was heavy and they were stopped at the bottom of the overpass in the turn lane at 67th Street; that in the side view mirror he saw a car coming down the sidewalk headed toward him; that he saw two children walking north on that sidewalk and saw what may have been one of the children on the hood of the car; that the body of the boy who died came to rest underneath a semi-trailer truck headed west on 67th Street; that the car hit the truck in which the witness was riding in the rear; that based on what he saw for a few seconds in the side view mirror he was of the opinion that the car was going about 50 miles an hour; and that the defendant was the driver of the car.

Mark Duffield, 12 years old, testified for the State that he was playing at the top of the hill on Cicero at the south end of the bridge; that he saw a car headed north going down the hill faster than the other cars; that at the end of the bridge the driver put on his brakes and skidded and

went up on the sidewalk; and that he ran down the hill and saw the car hit another car and a white truck.

Robert Madesa, 14 years old, testified for the State that he was with Lawrence Kill (who was killed) walking north on Cicero on the east sidewalk when they were struck by a car and that the next thing he remembers is waking up in the hospital.

Patrick Payne, a Chicago police officer, testified that he investigated an accident at Marquette and Cicero on October 21, 1971, involving two cars, three trucks and two pedestrians; that Lawrence Kill (who died) was underneath the tractor of a Be-Mac truck which was facing west on Marquette; that he saw tire marks on the sidewalk roughly 669 feet south of 67th Street; that the roof of the defendant's car was caved in, two tires were flat and the front end was damaged and that the right front fender of the defendant's car was against the right front fender of the Be-Mac truck. He also testified that he then went to the Von Solbrig Hospital, where the defendant, after being advised of his Miranda rights (to remain silent, to have a lawyer, etc.), stated that he was going north on the bridge one block south of 67th Street and that his gas pedal stuck and his brakes wouldn't work. He also testified that the one block between the bridge and 67th Street is all downgrade. On cross-examination, he admitted that he did not include in his accident report that the defendant said he was going 65 or 70 miles an hour. He ticketed the defendant for going too fast for conditions in going 40 miles an hour in a 40 mile zone and for driving an unsafe vehicle in that there were no brakes and a bad gas pedal, but was not able to explain why he put down 40 m.p.h. He also testified that the defendant was not under the influence of alcohol.

Robert Henker testified for the State that he is a machinist for the Chicago Police Department; that he has had long experience with Ford automobiles and is familiar with their workings; that on December 22, 1971, he examined the defendant's said Ford automobile at the Police Auto Pound in Chicago; that he removed the wheels and found the brake linings intact and the brake system functioning, although the brake shoes were badly worn; that he removed the carburetor and found that the shaft was frozen due to gummy substances but after it was cleaned up it was free; that he examined the linkage from the floor board to the carburetor and found nothing that would cause the gas pedal to stick; and that, in his opinion, the carburetor was functioning properly on the date of the accident. On cross-examination, he admitted that the car had been badly maintained and that the brake linings were badly worn, some down to the rivets; that he really couldn't tell the condition

of the car at the time of the accident; that there was a hole in the cap of the master cylinder; that if air gets into the brake system it can affect its function and that he did not bleed the brakes to find out if it had; that he didn't step on the accelerator but merely disconnected it; that there was about half a pedal of traveling in the brake pedal, which indicates that the brakes were poorly adjusted; that one of the shoe linings in the right rear brake was broken; and that the left and right front linings were down to the rivets.

It was stipulated that Lawrence Kill died on the day of the incident of head injuries; that he was in good health before said incident; that the defendant was 30 years old; and that the accident occurred in Cook County.

After the State had rested and a motion for a directed verdict had been denied, Standell King testified for the defense that he worked with the defendant and had ridden with him in the car involved in the accident about a week before, at which time the gas pedal did not stick and the defendant had no trouble stopping the car; that on the date in question he drove 10 blocks from the Lerner Warehouse to Cicero Avenue, with the defendant behind him; that traffic was heavy and they drove at about 5 miles per hour; that the defendant passed him about 3 car lengths south of the bridge going about 30 miles an hour; that the speed limit there is 40 miles an hour; that he saw the defendant's car strike the railing on the bridge at which time he was going 35-40 miles an hour; that he saw the defendant's brake lights go on when he hit the railing; and that the pavement on the bridge was rough and bumpy.

Dorothy Ballard testified for the defense that she saw the defendant leave work at about 4 P.M.; that she drove the 10 blocks to Cicero Avenue at 25-30 miles an hour and that he did not pass her; that when she got to the bridge traffic was backed up and she stopped on the incline; that, looking in her rear view mirror, she saw the defendant hit a car to her right rear and continue on down the side; that his car then went out of control and picked up speed; and that she then lost sight of it.

Brenda Newman testified for the defense that she was a passenger in the defendant's car on the day in question; that he had owned this car for about 1 week; that he moved along with the traffic at 20-25 miles an hour up to 71st Street, where he stopped as the first car in line; that at that point the road goes north up over a bridge over the railroad tracks; that, when they were about halfway up and could see the traffic ahead of them stopped for the light at the bottom of the hill, the defendant tried to stop the car but couldn't do so; that he said that the accelerator was stuck and kept pumping the brake pedal with his left foot and sticking his right foot under the accelerator pedal lifting it up but the car kept

right on going and hit the side of the bridge and then went up onto the sidewalk and down the hill on the sidewalk; and that at that point they were going 35-40 miles an hour.

The defendant's final witness, Ivan R. Dawson, testified that he had a bachelor's degree in engineering, is a registered professional engineer and has published papers in his field; that for the past 3 to 4 years he has worked for Alcoa testing automobile parts and components, including brakes and accelerators; that he examined the defendant's car at the Chicago Police Auto Pound; that he took off the right rear brake drum and found that the drum was scored $\frac{1}{32}$ inch deep by rivets which hold the drum in place and that the drum had not been turned when the new shoes were put on; that the carburetor linkage was badly rusted so that it could not be operated; that several of the linkage arms were disconnected, including one connecting the carburetor to the transmission to actuate the passing gear; that a spring, which has the function of resisting the action of the passing gear, was broken and a string was dangling from the arm on the passing gear towards the other linkages in the carburetor; that the vacuum line going from the manifold to the booster brake cylinder was disconnected and split; that the floor mat around the accelerator was badly wrinkled; that the string dangling in the carburetor could disturb the carburetor linkage so that it would not operate freely and that the broken spring would kick the passing gear in more easily and perhaps accidentally; that, based upon the damage to the radiator, etc., he was of the opinion that the speed of the vehicle upon final impact was definitely less than 40 miles an hour; that, under the facts here existing, the car could shift into the passing gear which would increase its power; and that the stopping distance of the defendant's car was substantially greater than with a car in good condition.

Although we have held that Officer Payne's testimony was properly admitted, we are not at all overwhelmed by it. Although he testified at the trial that the defendant, who was then in the hospital, having been seriously injured less than an hour before, said that he was hitting 65 or 70 on the bridge about one block south of 67th Street, he admitted that he did not reflect this in his accident report and that he ticketed the defendant for going too fast for conditions in going 40 miles per hour in a 40-mile zone and for driving an unsafe vehicle which had no brakes and a bad gas pedal, although he could not explain why he put down 40 m.p.h. He also admitted that he did not personally analyze the brake or steering mechanism of the car after the accident, and that the defendant was not under the influence of liquor. Furthermore he did not mention the defendant's alleged statement as to speed until he testified at the trial.

■■ We have carefully considered this very shaky testimony and all of the other testimony above set forth and conclude that there remains a serious and well-founded doubt as to the defendant's guilt.

■■ As our supreme court stated in *People v. Sledge* (1962), 25 Ill.2d 403, 407, 185 N.E.2d 262:

> "While it is the province of the jury to pass upon the question of guilt or innocence of an accused in the first instance, it is the duty of this court to carefully examine the evidence and if, after doing so, there remains a serious and well founded doubt of a defendant's guilt, the conviction must be reversed. (*People v. Gair*, 379 Ill. 458; *People v. McMahon*, 254 Ill. 62.)"

■■ Since we reverse on the ground that the evidence is not sufficient to support the guilty finding, we reverse without remanding the cause for another trial. (*People v. Rendas* (1937), 366 Ill. 385, 9 N.E.2d 237; *People v. Bradley* (1940), 375 Ill. 182, 30 N.E.2d 636; *People v. Mostafa* (1971), 5 Ill.App.3d 158, 274 N.E.2d 846, leave to appeal denied.) We therefore do not reach such problems as the sufficiency of the indictment or the constitutionality of the statute.

Reversed.

EGAN, P. J., and BURKE, J., concur.