**STATE of Maine**

v.

**Gerald E. HANKS, Jr.**

Supreme Judicial Court of Maine.

Feb. 20, 1979.

William P. Donahue, Dist. Atty., Roger Flaherty, Asst. Dist. Atty., Alfred, Elizabeth R. Butler, Legal Intern (orally), for plaintiff.

Childs, McKinley & Emerson by Richard S. Emerson, Jr. (orally), Portland, for defendant.

Before McKUSICK, C. J., and POMER-OY, WERNICK and DELAHANTY, JJ.

McKUSICK, Chief Justice.

Following a jury trial, defendant was convicted of two counts of criminal homicide in the fourth degree, 17–A M.R.S.A. § 204 (repealed P.L. 1977, ch. 510, § 40).[1] The sole issue on appeal is whether the evidence is sufficient to support the jury's verdict. We find that it is, and accordingly we deny the appeal.

Defendant was charged with "recklessly" causing the death of another human being on June 17, 1977. On that date, the Criminal Code provided that "a person acts recklessly with respect to a result of his conduct when he consciously disregards a substantial and unjustifiable risk that his conduct will cause such a result." 17–A M.R.S.A. § 10 (1975).[2] The Code also provided that a risk was "substantial and unjustifiable" within the meaning of the statute "if . . the disregard of the risk involves a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation." *Id.* The evidence in defendant's trial must therefore show that defendant *consciously* created a risk of death by driving in a manner which *deviated grossly* from the course of conduct a reasonable and prudent driver would have followed.

The following evidence entitled the jury to find, as it did, that defendant was guilty of recklessly causing the deaths of two other persons. During the early evening of June 17, 1977, an eye witness, George Patterson, was driving south on Route 117 in the Town of Buxton. Defendant's car was traveling in the opposite direction. Patter-son testified that as defendant's car came over the crest of a small hill, it was partially over the center line, encroaching upon the lane for southbound traffic. Patterson watched as defendant's car struck an oncoming car driven by Mickey Moore, and knocked Moore's car off the west side of the road. Both Moore and one of his passengers, Vicki Maxwell, died as a result of the collision.

Subsequent inspection of defendant's car revealed that it was equipped with three regular tires and one steel-belted radial tire located on the left front. The right front tire was almost completely bald, having only 1/32″ of measurable tread. Albert Godfrey, the director of the Bureau of Safety of the State Department of Transportation, testifying for the prosecution on the subject of the mismatched tires, told the jury that "the design of a radial tire is such that it has a quite soft side wall." Although four steel-belted radial tires would not prevent the driver from controlling the vehicle, Godfrey stated that "when you have only one, it gives you a very mushy effect . . . [as if] you had four matching tires and one was very nearly flat caus[ing] it to wobble." Given the tire mismatching and the bald condition of the front right tire, Godfrey told the jury he had severe doubts as to whether defendant had the ability to maintain proper control of his car.[3] Lay jurors are familiar with the experience of driving on a flat tire, which Godfrey equated with the experience of driving Hanks' vehicle. They were entitled to conclude that the "mushy effect" produced by the mismatched radial tire must have been readily apparent to defendant.

---

1. 17–A M.R.S.A. § 204, as effective at the time of the alleged offense, provided in part:

 "A person is guilty of criminal homicide in the 4th degree if he: A. Recklessly causes the death of another human being; . . .."

2. 17–A M.R.S.A. § 10 was subsequently amended by P.L. 1977, ch. 510, § 20. The amendment removed the phrase "substantial and unjustifiable" from the definition of the risk.

3. The State laid a proper foundation for Godfrey's expert testimony by demonstrating his qualifications and his special expertise in the field of traffic safety. Godfrey testified that he had a bachelor's degree in civil engineering and that he had done graduate work in traffic engineering at Northwestern University. In addition, his 22 years of experience in the field and attendance at a number of seminars on accident reconstruction, motor vehicle design, and kinesiology provided a solid foundation on which to base expert testimony.

Defendant Hanks took the stand and gave testimony which contradicted the testimony of George Patterson in several respects. Although Patterson said that defendant's vehicle was partially over the center line when it first appeared over the crest of a hill, defendant denied this. Patterson stated that Moore's vehicle was properly in its southbound lane; but defendant testified that Moore's car was 50% over the center line on Hanks' side of the road. According to Hanks, it was because Moore's car was straddling the center line that Hanks decided to make a left turn across the southbound traffic lane in an attempt to avoid Moore's vehicle.

The lone passenger in defendant's vehicle was his wife. Though defendant testified that she "screamed in terror" when she saw the Moore vehicle coming toward them straddling the center line, defendant never called his wife to the stand as a witness in his behalf. Her absence was unexplained. "The jury might have considered that [her] failure to corroborate [his] testimony as to these matters casts further doubt upon the value and credibility of the [defendant's] statements." *State v. Silva*, 153 Me. 89, 101–02, 134 A.2d 628, 634 (1957). *See also Wright v. Bubar*, 151 Me. 85, 91, 115 A.2d 722, 725 (1953).

Finally, the testimony of prosecution witness David Dunn also directly contradicted defendant's story. Though defendant attributed the blame for the accident to the deceased driver Mickey Moore, Dunn testified that while giving Hanks first aid treatment, defendant repeatedly stated, "It's all my fault." Thus, Hanks' trial story was contradicted by his own statements at the time of the accident, which evidenced a subjective consciousness of driving misconduct.[4]

The testimony of Patterson and Godfrey afforded the jury a sound basis for determining that Hanks was driving with mis-matched tires which severely impaired his ability to control the car and that he was straddling the center line of the highway as he approached the Moore vehicle. The jury, under the proper instruction here given, was justified in concluding that such conduct constituted a gross deviation from the conduct of an ordinarily prudent driver. The jury was also entitled to believe that Hanks was well aware of the dangerous "mushy flat tire effect" caused by the mismatched tires. Finally, the jury was justified in deducing, from the unexplained failure by defendant to offer his wife as a witness, that had she testified she would have confirmed their determination that her husband acted in a reckless manner, thus causing the deaths of Moore and Maxwell. 1 *Underhill's Criminal Evidence* § 45, p. 91 (6th ed. 1973); 2 *Wigmore on Evidence* § 286 (3d ed. 1940). *See also State v. Silva, supra.*

The trial record amply supports the jury's determination of defendant's guilt. The entry must be:

Appeal denied.

Judgment affirmed.

ARCHIBALD and NICHOLS, JJ., did not sit.

GODFREY, Justice, dissenting.

I believe that there is not sufficient evidence to support the jury's verdict and must respectfully dissent. Although the indictment alleged that the defendant was operating an automobile "at a dangerous and recklessly excessive speed" and that the vehicle's braking devices were "in unsound order," no evidence whatever was presented at trial supporting either of those allegations.

The Court cites no authority for the proposition that operation of an automobile with one mismatched tire or with a bald tire, or

---

4. No objection was made at trial to the admission of this evidence of defendant's extrajudicial statement, nor has any argument been made on appeal that its use by the jury should have been in any way restricted. Accordingly, we do not reach the question whether the jury could properly consider defendant's statement, "It's all my fault," as tending to prove anything beyond his consciousness of wrongful conduct. *See* 2 Blashfield, *Automobile Law and Practice* § 430.1 (3d ed. 1977).

both, involves a "gross deviation from the standard of conduct that a reasonable and prudent person would observe" within the meaning of the definition of "recklessness" in 17–A M.R.S.A. § 10(3). Defendant's operation of his wife's vehicle in that condition might properly have been found negligent for purposes of a civil action, but it cannot be justly characterized as reckless.

Defendant's statement immediately after the accident that the accident had been his fault, though consistent with negligent operation of the vehicle, was not evidence of recklessness as defined in the Criminal Code.

There was testimony that the defendant's automobile had partially crossed the center line shortly before the accident. Had there been any evidence that defendant was operating at excessive speed, the jury could have properly attributed his being over the line to a conscious disregard of the risk thereby created within the meaning of subsection (A) or (B) of section 10(3) of the Criminal Code. Here no such inference is permissible. Without any evidence that the defendant's being partially over the center line was the result of his conscious disregard of a risk, within the meaning of section 10(3), the mere fact that he was over the line will not support a conviction for reckless homicide. *See People v. Richardson*, 21 Ill.App.3d 859, 316 N.E.2d 37 (1974).

I cannot agree that the jury was entitled to infer that the defendant acted recklessly from the fact that his wife did not testify at trial. The State could have called Mrs. Hanks as a witness;[1] defendant could not have prevented his wife from testifying except as to confidential communications.[2] The inference that the majority draws from from her non-appearance is not permissible, generally speaking, where the person in question is equally available to both parties. 2 *Wigmore, Evidence* § 288 (3d ed. 1940). Any inference that the jury might have drawn from the fact that the defense did not call Mrs. Hanks as a witness would have been pure speculation. Even if the dictum

in *State v. Silva*, relied on by the majority, correctly states the law, its application here to defendant's failure to call his wife as a witness can result, at most, only in impeachment of his credibility. It does not provide substantive evidence of his guilt. In the absence of any other testimony to support an inference of recklessness, the non-appearance of Mrs. Hanks may not be reasonably used to support the conviction.

The evidence presented at trial was insufficient, as a matter of law, to establish that the defendant recklessly caused the death of another human being. The appellant's motion for an acquittal, seasonably made at trial, should have been granted. The judgment of conviction should be vacated and the defendant discharged.

---

1. The record does not show whether Mrs. Hanks was present at the trial.

