**ALMEIDA BUS LINES, Inc.**
**v.**
**CURRAN et al.**
No. 4769.

United States Court of Appeals,
First Circuit.
Jan. 21, 1954.

Joseph C. Wells, Washington, D. C., (J. Burke Sullivan, Boston, Mass., King, & King, Washington, D. C., and Graham, Gargan & Sullivan, Boston, Mass., on the brief) for appellant.

Daniel P. Collins, Boston, Mass., (Harry Demeter, Jr., Boston, Mass., on the brief) for Massachusetts Labor Relations Commission, appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

The appeal in this case is from a judgment of the district court on June 23, 1953, dismissing a complaint for lack of jurisdiction.

Almeida Bus Lines, Inc., plaintiff-appellant herein, is a Massachusetts corporation engaged in the business of transporting passengers and freight by motor bus within the Commonwealth. Under special contracts it also transports passengers both within and without the Commonwealth. In 1952 ap-

pellant's gross revenue from all operations amounted to nearly $500,000, of which hardly more than .3 per cent was attributable to its interstate activities. The company, however, purchases much of its supplies and equipment from sources outside the Commonwealth.

For several years past, appellant has resorted to various legal maneuvers designed to avoid its being brought to account either under the National Labor Relations Act, as amended, 61 Stat. 136, 29 U.S.C.A. § 151 et seq., or under the State Labor Relations Law of Massachusetts, Mass.G.L. (Ter.Ed.) Ch. 150A, because of certain alleged unfair labor practices.

In June, 1948, Local No. 59 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL, filed a representation petition with the National Labor Relations Board at its regional office in Boston, seeking certification for a unit of respondent's bus drivers. This petition was later withdrawn on the strength of advice from a field examiner of the national board to the effect that that board would not assert jurisdiction over Almeida because of the local character of its operations, following a policy applied in Duke Power Co., 77 NLRB 652 (1948). This information was confirmed by a letter from the field examiner to Almeida dated July 28, 1948. Local 59 of the Teamsters' union thereupon petitioned appellee, the Labor Relations Commission of Massachusetts, for certification, but such certification was denied by the state commission because Local 59 failed in a state-conducted election.

On August 26, 1949, the Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America, Division 1442, one of the appellees herein, was certified by the state commission as the bargaining representative of Almeida's employees, following an election conducted by the commission pursuant to a representation petition filed by the said union under the state act.

In October, 1949, appellee union (Amalgamated Association, etc.) filed a charge with the state commission alleging that Almeida had committed an unfair labor practice in its refusal to bargain with the union pursuant to the certification. The state commission on February 27, 1950, entered an order requiring Almeida to bargain with the union. Upon Almeida's refusal to comply with this order, the state commission obtained an enforcement decree from the state Superior Court on December 1, 1950, from which decree Almeida appealed to the Supreme Judicial Court of Massachusetts. That appeal, so far as appears, is still pending before the Supreme Judicial Court.

Meanwhile, on September 28, 1950, certain employees of Almeida went out on strike in consequence of Almeida's alleged refusal to bargain. On January 3, 1951, appellee union filed another charge with the state commission, asserting that Almeida on or about December 21, 1950, had refused to reemploy the employees who had struck on September 28, 1950, thereby in effect being guilty of the unfair labor practice of discriminatorily discharging such employees contrary to § 4(3) of the state act. Almeida thereupon moved that the state commission dismiss this latter charge on jurisdictional grounds. Apparently this motion to dismiss was grounded upon an opinion of the National Labor Relations Board on October 3, 1950, in Local Transit Lines, 91 NLRB 623, in which case the national board announced new standards whereunder it would thenceforth assert jurisdiction over public transportation systems like that of Almeida.

In consequence of the foregoing, appellee union deemed it expedient to seek relief before the national board.

Accordingly, on February 26, 1951, Amalgamated filed with the National Labor Relations Board an original charge against Almeida. The charge was subsequently amended, and upon the amended charge the national board issued its complaint against Almeida on June 19, 1951. The complaint alleged that Almeida had committed an unfair labor

practice on or about September 22, 1950, and at all times thereafter, by refusing to bargain collectively with the Amalgamated union, though that union was the duly designated bargaining representative of the employees; that Almeida's employees at their New Bedford terminal went on strike on September 28, 1950, in consequence of this unlawful refusal to bargain; that on or about December 21, 1950, certain striking employees listed by name applied for reinstatement; that Almeida on or about December 21, 1950, refused, and thereafter continued to refuse, to reinstate said employees for the reason that they were adherents of the Amalgamated union, or had participated in the strike, or had refused to work during the strike. Almeida filed an answer to the complaint, denying the commission of any unfair labor practices.

A trial examiner of the national board held a hearing on the complaint and answer in July, 1951. Thereafter the trial examiner filed his intermediate report in which he found that Almeida was subject to the National Labor Relations Act, and that it had committed the unfair labor practices substantially as alleged in the complaint; and recommended that the board enter an order in the usual terms directing Almeida to bargain collectively with Amalgamated upon request, and to reinstate with back pay the group of striking employees.

The case came before the national board upon Almeida's exceptions to the intermediate report. In its exceptions Almeida contended that the complaint should be dismissed by the national board on the ground that it would not effectuate the policies of the act for the board to assert jurisdiction over Almeida's operations in this case. As observed by the national board in its decision, Almeida in effect argued for an application of the rule of equity and fairness which the board had applied in Screw Machine Products Co., 94 NLRB 1609 (1951).

The national board found merit in Almeida's contention and entered an order dismissing the complaint. The reasons for this dismissal were explained in its decision as follows:

"We are convinced from its history that the circumstances surrounding the Teamsters' withdrawal of its representation petition in 1948 reasonably led the Respondent to believe that its operations would not be subject to assertion of the Board's jurisdiction and therefore justified the continued belief, until notice to the contrary, that no sanctions would be imposed by the National Board for any conduct allegedly violative of the Act committed by the Respondent. No such notice was forthcoming until the issuance of the Board's decision on October 3, 1950, in the Local Transit Lines case. By then, the conduct found by the Trial Examiner to have been unlawful had already been committed. It is true that the refusal to reinstate the strikers, found by the Trial Examiner to be a violation, did not occur until December 21, 1950, some time after the announcement of the new decisions on exercise of jurisdiction had issued. However, we are not disposed here to separate the refusal to reinstate from the original refusal to bargain, which, as found by the Trial Examiner, occurred before the announcement of the new jurisdictional policy, particularly as the rights of the striking employees to reinstatement necessarily must be conditioned upon a preliminary finding of an earlier refusal to bargain. Accordingly, we are satisfied that equity and fair play require dismissal of the instant complaint in its entirety."

Having thus persuaded the national board to dismiss the complaint against it, Almeida had still to face the parallel proceeding before the state commission which had been held in abeyance pending the outcome of the case before the national board. The state commission proceeded to issue its complaint against

Almeida on the basis of the aforementioned charge which Amalgamated had filed on January 3, 1951. Almeida filed a motion to dismiss this complaint. The commission held a hearing on this motion and on Almeida's earlier motion to dismiss Amalgamated's charge on jurisdictional grounds. Thereafter the commission ruled that the motions to dismiss would be denied, and notified the parties that it was asserting jurisdiction in the case and was setting the matter down for hearing on April 3, 1953.

It was in the foregoing setting that Almeida filed its present complaint in the federal district court on April 2, 1953. The complaint prayed for (1) a judgment declaring that Almeida is engaged in a business affecting commerce within the meaning of § 2(6) and (7) of the National Labor Relations Act, as amended, and that the state commission has no jurisdiction in the premises, and (2) a judgment enjoining the state commission from prosecuting Almeida further for any alleged refusal to bargain with the Amalgamated or for any alleged refusal to reinstate strikers on or about December 21, 1950.

The complaint states in general language that, unless the relief prayed for is granted, Almeida will be required to expend great time, effort and expense to defend itself against the proceeding which Amalgamated and the state commission have instituted against it and will therefore suffer irreparable injury for which it has no remedy at law. However, no specific jurisdictional amount is pleaded, and the complaint asserts that the district court has jurisdiction over the subject matter under 28 U.S.C. § 1337 reading: "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." There may be some doubt whether the present complaint can be said to arise under the National Labor Relations Act, within the meaning of 28 U.S.C. § 1337. Cf. American Federation of Labor v. Watson, 1946, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873. Perhaps the complaint arises "under the Constitution," based upon constitutional implications from the commerce clause and the supremacy clause, and that the reference in the complaint to the terms of the National Labor Relations Act is only incidental to the constitutional claim upon which the complaint is founded. If that is the correct view, jurisdiction of the district court would rest on 28 U.S.C. § 1331, providing, however, that the matter in controversy exceeded the sum of $3,000.

We do not stop to decide the point mentioned in the preceding paragraph, because we are so entirely clear that the complaint in this case was properly dismissable for lack of equity jurisdiction, under the conventional criteria which govern a court of equity in granting or withholding its extraordinary remedies.

The guiding principle applicable here was stated in American Federation of Labor v. Watson, 1946, 327 U.S. 582, 593, 66 S.Ct. 761, 766, 90 L.Ed. 873, as follows: "Where a federal court of equity is asked to interfere with the enforcement of state laws, it should do so only 'to prevent irreparable injury which is clear and imminent'", citing Douglas v. City of Jeannette, 1943, 319 U.S. 157, 163, 63 S.Ct. 877, 87 L.Ed. 1324. This test of irreparable injury is not met in the present case. The proceeding now pending before the state commission is concerned only with past conduct of Almeida,* namely, the alleged discriminatory refusal to rehire the strikers on or about December 21, 1950, as alleged in Amalgamated's charge filed January 3, 1951. The previous proceeding before the state commission involving the charge of Almeida's unlawful refusal to

---

* In this respect the case is distinguishable from cases principally relied on by appellant, such as Linde Air Products Co. v. Johnson, D.C.D.Minn.1948, 77 F.Supp. 656; United Office and Professional Workers of America v. Smiley, D.C.M.D. Pa.1948, 77 F.Supp. 659.

bargain with Amalgamated subsequent to its certification on August 26, 1949, has already resulted in an order by the state commission, later enforced by a decree of the Superior Court, which decree is now pending on appeal before the Supreme Judicial Court. The past conduct involved in the pending proceeding before the state commission is a specific subject matter with which the National Labor Relations Board has declined to concern itself, for the reasons above stated. Almeida cannot escape the expense of litigating the legal issue of jurisdiction of the state commission, whether it fights that issue in the federal courts, pursuant to the present complaint, or before the state commission and the state courts, with ultimate review by the Supreme Court of the United States. Of course, if the relief sought in the present complaint is denied, Almeida may also choose to undergo the burden and expense of litigating before the state commission and the state courts issues relating to whether it committed the unfair labor practice as charged. But such extra expense, assuming Almeida chooses to pursue that course of conduct, would not be the kind of irreparable injury warranting the intervention of a federal court of equity to enjoin the prosecution of the administrative proceeding pending before the state commission. For that proposition we need do no more than cite Myers v. Bethlehem Shipbuilding Corp., 1938, 303 U.S. 41, 47–48, 51–52, 58 S.Ct. 459, 82 L.Ed. 638. And where interference with state proceedings by injunction is inappropriate, interference by way of declaratory judgment is equally inappropriate, for the declaratory judgment, if rendered, would be res judicata in the state proceedings. Great Lakes Dredge & Dock Co. v. Huffman, 1943, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407; Paul Smith Construction Co. v. Buscaglia, 1 Cir., 1944, 140 F.2d 900. See Public Service Commission of Utah v. Wycoff Co., Inc., 1952, 344 U.S. 237, 247, 73 S.Ct. 236; United Air Lines, Inc., v.

Public Utilities Commission of California, D.C.N.D.Cal.1952, 109 F.Supp. 13, reversed per Curiam 1953, 346 U.S. 402, 74 S.Ct. 151, on the authority of the Wycoff case, supra.

The judgment of the District Court is affirmed.