**STATE of Maine**

v.

**Michael FARRIS.**

Supreme Judicial Court of Maine.

Argued June 17, 1980.
Decided Oct. 7, 1980.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty. (orally), Nancy Ziegler, Richard Currier, Barbara Montegani, Law Student Interns, Portland, for plaintiff.

Bernstein, Shur, Sawyer & Nelson, Peter J. Rubin (orally), Portland, for defendant.

Before McKUSICK, C. J., and WERNICK, GLASSMAN and ROBERTS, JJ.

WERNICK, Justice.

The defendant Michael Farris has appealed from a judgment entered in the Superior Court (Cumberland County) on the verdict of a jury finding him guilty, as charged, of arson, 17–A M.R.S.A. § 802(1)(A) (Class B). The appeal raises four issues, whether: (1) certain evidentiary rulings by the presiding justice should be held reversible error; (2) the admission of other evidence, not objected to at trial, should be noticed on appeal as error affecting substantial rights and therefore requiring that defendant's conviction be set aside; (3) the instructions of the presiding justice as to the burden of proof were prejudicial error; and (4) defendant

was subjected to prejudicial error, requiring setting aside of the conviction, by the closing argument of the prosecutor containing statements and involving incidents harmful to defendant.

The indictment charged that on or about June 22, 1978 defendant set on fire a house situated next door to his own house. The burned structure was owned by the parents of defendant's wife, a Mr. and Mrs. Weisman.

On the evidence presented at trial the jury was entitled to make the following findings of fact.

On June 11, 1978 there had been a small fire at the Weisman house. The insurance company holding the fire insurance policy on the house had conducted an investigation of that earlier fire and the investigation had disclosed that the entire premises had been saturated with gasoline or kerosene. On June 13, 1978, the insurance company sent to Mr. and Mrs. Weisman a notice of cancellation of their policy, effective July 5, 1978. The company also hired a guard to protect the property on a 24–hour basis.

On June 22, 1978, there was the second fire at the Weisman house that is our present concern. On this occasion, the stationed guard heard a dog coming down stairs, and he went to let the dog out of the house. When he returned to his station, he heard a small explosion and saw blue flames at the back of the house. An investigation of the fire by a representative of the State Fire Marshall's Office revealed that it had been set with the aid of a large quantity of liquid accelerant. Defendant told one of his acquaintances, Barry Colby,

that he was involved in setting this June 22nd fire.

*1.*

Defendant's first claim of error relates to Barry Colby's testifying at trial, as a witness for the State, as to defendant's admitting his involvement in the setting of the June 22nd fire. During the State's direct examination of Colby, there was the following colloquy:

"Q. [A]nd did Michael Farris mention one or two fires?

"A. He said something about the first time he did it–they did it, they didn't do it right or something like that–

"[DEFENSE COUNSEL]: I would move to strike the answer. It's non–responsive.

"THE COURT: The objection is overruled."

Defendant contends that the answer should have been excluded as non–responsive and that the failure to exclude it was error highly prejudicial to defendant, since the non–responsive answer gave the jury reason to believe that defendant had also been involved in setting the first fire (of June 11th).

We decide that under Maine law the failure to strike a non–responsive answer becomes error only when, beyond being non-responsive, the answer is inadmissible on some other ground. *See State v. Worrey*, Me., 322 A.2d 73, 78 (1974).[1] Here, the objection was made solely on the ground of the non–responsiveness of the answer and, therefore, no cognizable

1. We note with approval the observation in 3 J. Wigmore, Evidence § 785, at 201 (Chadbourn rev. 1970):
 "Courts ought to cease repeating the novel and unwholesome assertion that 'where an answer is not responsive to the question put, it is the duty of the court to strike it out, on motion.'
 "This topic of responsiveness has somehow become in modern times beset with crude misunderstandings that tend to suppress truth and turn the inquiry into a logomachy:
 "... Sometimes it is said that the *party questioning* may object on this ground, . . . . But there should be no such distinction; if the answer gives an admissible fact, it is receivable, whether the question covered it or not. No party is owner of facts in his private right. No party can impose silence on the witness called by Justice." (emphasis in original)

ground of error was preserved for appellate review.[2]

### 2.

In another of his points on appeal defendant maintains that it was error for the presiding Justice to overrule his objection to the "form" of a question the prosecutor asked a police officer who was at the scene of the crime. The question, relating to the arrival of a Mr. Keith Mains at the fire, was:

> "Q. All right. Then at the rate of speed you saw him travelling and assuming that he lives eight to ten miles away, would it take him—would it have taken him approximately that long to get there from his house?

As made to the "form" of the question, defendant's objection was properly overruled. The question is not leading. Moreover, under our rules of evidence, that an hypothetical is posed to a non–expert witness, or that the opinion of such a witness is sought to be elicited, is not, solely for that reason, error. Here, by objecting only to the "form" of the question, defendant failed to preserve for appellate cognizance in ordinary course what, arguably might have been substantive error in the question, i. e., that a proper foundation for the question had not been laid under Rule 701(a) M.R.Evid., or that it was irrelevant under Rule 402, or if relevant, that it was misleading (Rule 403).

Even if we assume such substantive error, we hold that it would not be "obvious" error "affecting substantial rights." Rule 103(d) M.R.Evid., Rule 52(b) M.R. Crim.P. Counsel for the defendant had previously made inquiry regarding Mr. Mains and had elicited testimony helpful to defendant, even if irrelevant, that the police officer was of the opinion that Mr. Mains may have been involved in the commission of the crime for which defendant was on trial. Since the answer the police officer gave to the question now at issue tended to refute the earlier answer obtained from the officer by defense counsel, even if thereby irrelevance was being compounded, defendant's trial was not rendered unfair. It is important in this regard that in his testimony the officer had also volunteered the information that before he saw Mr. Mains at the fire at the Weisman house, he had seen him elsewhere, at a place not his home. Since this testimony would tend to discredit the basic premise of the prosecutor's hypothetical question, namely, that Mr. Mains was at his home and not at some other place closer to the Weisman house, it would tend to neutralize the potential harm to defendant arising from the question.

### 3.

By a third point on appeal defendant asserts that the admission of certain evidence, without objection by defendant at trial, should be held error so serious and prejudicial that we must set aside the judgment of conviction in the interests of avoiding injustice. The contention is that the presiding justice should have excluded: (1) the testimony of a witness stating, incorrectly, that defendant owned the burned structure and (2) irrelevant testimony as to the occurrence of a theft during the first fire and of defendant's relationship to the person from whose home the stolen goods were later recovered.

We conclude that in each of these instances the admission of the testimony was not obvious error affecting substantial rights of the defendant.

Defendant's contention is that the prosecutor's questions regarding whether the police officer had ascertained, after the fire, the identity of the person who owned the burned structure and whether the officer would tell the jury the name of the owner, were questions asked without proper foundation, calculated to elicit inadmissible hearsay.

---

**2.** *We discern* no valid ground of inadmissibility that could have been preserved. The statement at issue, if made as Colby testified it was made, was an admission by defendant bearing upon his state of mind, as well as his possible motive, in regard to the setting of the June 22nd fire for which defendant was on trial.

Turning first to the hearsay aspect of the argument, we are not informed as to the source of the officer's knowledge, and therefore we cannot say whether his answer would be based on inadmissible hearsay rather than, for example, on an admission defendant might have made.

■ As to the other facet of the argument, that the question and response should have been disallowed for lack of a proper foundation, (Rule 602, M.R.Evid.), we conclude that it must be held harmless error. The State, on redirect, elicited from the same witness a response indicating that Mr. and Mrs. Weisman were the owners of the property in question, and the State introduced in evidence the deed of record showing their ownership. Even if, nevertheless, the evidence attributing ownership to the defendant could have permitted an inference by the jury that defendant's motive for committing arson was not to enable his "in–laws" to be paid the insurance proceeds but to enable defendant to collect the insurance proceeds for himself, the particular question and answer now under consideration was merely cumulative evidence. There was other testimony, properly admissible, tending to show that even if the Weismans were the owners of record, defendant and his wife were looked upon as the "de facto" owners of the burned property, and, therefore, that defendant might have thought (whether it was correct or not) that he would be paid the insurance proceeds.

■ The other evidence as to which defendant directs his "manifest injustice" attack is testimony given by Mrs. Weisman concerning a theft of property during the first (June 11th) fire, and the discovery of that stolen property at the home of a Richard Wallingford who had been identified in the evidence as a cousin and associate of the defendant.[3]

First, we regard this testimony of Mrs. Weisman as being in large part cumulative. The State's witness, Colby, had already tes-

tified that defendant had admitted his involvement in the first fire, and this testimony was relevant to the issue of defendant's state of mind, as well as his motive, regarding the setting of the second (June 22nd) fire. Moreover, defendant's admission relative to the first fire, as Colby described the admission, suggested that defendant was involved in it with an accomplice. The direct and cross-examination of Colby had already produced evidence that defendant associated with Richard Wallingford. In addition, on cross-examination of Colby defense counsel had elicited testimony that Wallingford was defendant's cousin and that he may have had some ownership interest in the house. All this testimony, previously in evidence, would permit an inference that Wallingford may have been the other person, or one of the other persons, involved with defendant in the setting of the first fire.

Thus, what was newly added by Mrs. Weisman's testimony was the fact that a stereo missing from the house after the first fire had been recovered at Mr. Wallingford's house. Conceding that this information was not relevant, as substantively tending to prove some element of the crime charged against defendant (the setting of the second fire), the State argues that the information had bearing on Colby's credibility about which defense counsel, on cross–examination of Colby, had raised some question. The State says that Mrs. Weisman's corroboration of some portions of Mr. Colby's story could help bolster his overall credibility.

Rule 611(b) M.R.Evid., provides:

"A witness may be cross–examined on any matter relevant to any issue in the case, *including credibility*. In the interests of justice, the judge may limit cross–examination with respect to matters not testified to on direct examination." (emphasis added)

---

**3.** Although there was an objection to this line of questioning on the grounds that it exceeded the scope of cross–examination, this objection was properly overruled. *See* Rule 611(b) M.R. Evid. Defendant conceded in his brief on appeal and at oral argument that this was not "saved error" for the purposes of appellate review.

In allowing cross–examination on the matter in question, the presiding justice may fairly be taken to have been exercising the broad discretion Rule 611(b) gives him. We cannot say that it would have been irrational for the presiding justice to conclude that such further testing of Colby's credibility outweighed any undue risks of unfair prejudice, confusion of the issues or misleading of the jury. (Rule 403 M.R. Evid.)

■ In any event, even if we assume that the presiding justice should have excluded Mrs. Weisman's testimony about the stereo which was stolen during the first fire and was found at Mr. Wallingford's house, we must nevertheless conclude that this error did not result in the serious injustice of making defendant's trial unfair. If, in general, there might be unfairness in bringing to the attention of the jury that a defendant on trial for one crime had committed another crime unrelated to the crime at issue, special circumstances existed here that dissipated the potential of any such unfairness in defendant's trial.

On the evidence in this case the jury could be led to believe that defendant had committed theft on a prior occasion only if the jury believed the testimony of Mr. Colby, as well as the testimony of Mrs. Weisman. This must be so because the only link between Mrs. Weisman's testimony about a theft during the first fire and a conclusion that defendant had committed that theft was Mr. Colby's testimony that defendant had admitted being a participant in the first fire. Thus, this unique evidentiary linkage renders self–defeating defendant's argument to show that his trial was unfair. The jury could look upon defendant as a thief only by accepting Colby's testimony as to defendant's admissions, and that testimony, while tending (in combination with Mrs. Weisman's testimony) to show defendant's commission of another crime, simultaneously provided *independently* cogent evidence of defendant's guilt of the crime for which he was on trial.

### 4.

■ We reject another contention of defendant that was not saved at trial and is therefore cognizable only as obvious error. Defendant says that the presiding justice gave an erroneous instruction regarding the State's burden of proof, when he told the jury:

"Even if you find ... [the elements of the crime charged] *and you do not believe the defendant did it*, you must return a verdict of not guilty." (emphasis added)

Defendant's point is that the words we have emphasized gave the jury the erroneous message that they were not entitled to acquit defendant merely because they had a reasonable doubt that defendant participated in setting the fire at issue; rather, to acquit, they must go further and reach the conclusion that it was proved that in fact defendant did not participate in setting the fire. Whether or not this is the fair interpretation of the single sentence defendant has extracted for isolated examination, we are satisfied from our reading of this sentence within the context of the entirety of the charge of which it was a part that there was no error at all, let alone obvious error requiring reversal of the judgment of conviction. The charge as a whole made amply plain that if the jury was left with a reasonable doubt that defendant committed the crime, defendant must be acquitted.

### 5.

Defendant's last point on appeal is his contention that there was reversible error because of the omission to make a record of the prosecutor's closing argument in which were statements, and during the course of which events occurred, prejudicial to defendant.

■ Prior to the amendment, in 1977, of 4 M.R.S.A. § 651 by P.L.1977 c. 208 § 1, it was entirely within the discretion of the presiding justice whether to grant, or deny, a motion that the closing arguments of counsel be recorded. *State v. Taylor*, Me., 343 A.2d 11, 21 (1975). Since the 1977 amendment, 4 M.R.S.A. § 651 (1979) provides that court reporters

*"shall* take full note ... *at the request of any party,* [of] all statements and arguments of counsel addressed to the jury." (emphasis added)

The amended statute thus plainly places on the attorney who may want the recording of closing arguments the burden to seek to have it done.

 Here, the record shows no request for a recording of the argument and, hence, the fact alone that the prosecutor's closing argument went unrecorded does not constitute error.[4]

We do have of record, however, a prepared statement, settled and approved by the Superior Court in accordance with Rule 39(b) M.R.Crim.P., describing events occurring during closing argument. These events, defendant says, involved prejudicial error requiring reversal of the judgment of conviction.

One such sequence of events is described in the prepared statement as follows:

"1. During the closing argument of the Assistant District Attorney, he made a statement to the jury the substance of which was: where was the defendant the night of the fire? Surely Mrs. Farris would have some information about his whereabouts; why hasn't she come in and testified;

"2. Counsel for defendant thereafter argued, without objection, that the State was free to call Mrs. Farris and could subpoena any witness it wanted to;
. . . ."

 Conceding that prosecutorial comment on the failure of a witness to testify is not per se improper, *State v. Bey,* Me., 342 A.2d 292, 298 (1975),[5] defendant argues that the prosecutor's comment became improper, here, because of the "husband-wife" privilege established by Rule 504 M.R.Evid.

 First, we note that there is no evidence on the record before us that defend-

ant objected to the prosecutor's comment. The alleged error can be given appellate cognizance, then, only if it may be taken to be manifest error affecting substantial rights so as to cause injustice.

Addressing defendant's claim in that context, we point out that Rule 504(b) operates only to allow one spouse a privilege to prevent the other from testifying as to "any confidential communication" between them. It is pure speculation, here, that any information Mrs. Farris had as to her husband's whereabouts would have been based on such a confidential communication. The prosecutor's comment, therefore, may well not have been error at all, let alone obvious error. Neither can we conclude that if the prosecutor's comment was at all prejudicial to defendant, the prejudice was an impermissible prejudice so serious as to cause defendant's trial to be unfair.

 The prepared statement refers to one other event that occurred during the prosecutor's closing argument:

"During the course of the closing argument by the Attorney for the State, the Court had to wake up a juror who had fallen asleep."

Again, since the record shows no action by defendant at trial to preserve alleged error for appellate cognizance in ordinary course, either through making a motion for a mistrial or by otherwise asking the court to take appropriate remedial action, we examine the asserted infirmity only in the context of whether it caused defendant's trial to be unfair.

The prepared statement leaves ambiguous whether the juror had fallen asleep before or after the prosecutor began his closing argument. Hence, all that we can take from the record as error "manifestly" established is that a juror had not heard the entirety of the prosecutor's closing argu-

4. Even had there been a request for transcription of the argument and therefore error in the failure to record the argument, such error would be harmless in the absence of a showing that the failure to record led to actual prejudice. *State v. Smith,* Me., 415 A.2d 553, 561 n. 3 (1980).

5. Even if such prosecutorial comment is not per se improper, we take the precaution to note that it can involve serious risks of being unfair.

ment, and therefore that particular juror might not have fully understood, or might have misunderstood, the part of the prosecutor's argument he did hear. Such infirmity in the proceedings does not cause the trial to be an unfair trial.

The entry is:

Appeal denied; judgment of conviction affirmed.

All concurring.