STATE of Maine

v.

Ralph L. POLAND.

Supreme Judicial Court of Maine.

Argued Jan. 14, 1981.
Decided March 13, 1981.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty., Portland, Darrell Nichols, Law Student (orally), for plaintiff.

Grover G. Alexander (orally), Gray, for defendant.

Before McKUSICK, C. J., and WERNICK, NICHOLS, ROBERTS and CARTER, JJ.

McKUSICK, Chief Justice.

Defendant Ralph L. Poland appeals his conviction in the Superior Court (Cumberland County) after a jury trial on two counts of criminal mischief, 17–A M.R.S.A. § 806 (Supp.1980). Defendant's sole contention on appeal is that the presiding justice erred in excluding certain proffered testimony under M.R.Evid. 403 as cumulative and unfairly prejudicial to the State. Determining that the justice did not overstep the bounds of his permissible discretion, we deny the appeal.

Defendant Poland was convicted of criminally damaging the truck of Dorian Rivard on two separate occasions during the evening of February 17, 1980. At that time Rivard and his family were living in a mobile home in the "Trailer Village" in New Gloucester operated by defendant Poland, who himself lived next door with his family. The jury could have found from the evidence that during that February evening defendant Poland first damaged Rivard's truck by driving it into a brook and then, after the truck had been returned to the Rivard dooryard, damaged it further by using his snowplow to push the truck into Rivard's mobile home.

On appeal defendant does not challenge the adequacy of the evidence to justify the jury's verdict that he was guilty beyond a reasonable doubt. His only complaint is that he was not permitted to bring out, through cross-examination of Rivard and through direct testimony of defendant's daughters, the fact of an alleged confrontation that took place on January 6, 1980, between Rivard and the Poland family, in which Rivard had been the aggressor.

When defense counsel at trial tried to cross-examine Rivard on the January incident, the following colloquy took place at the bench:

[DEFENSE COUNSEL]: I would press the question on the theory that I anticipate that [Rivard is] going to answer yes, that there was a gun incident where he threatened to shoot the [Polands'] dog—actually brandished a revolver—and I'm going to suggest to the Court that this coupled with the other incidents between the two families, I think, *is material and relates to his possible bias or his willingness to color his testimony and not be entirely truthful in this instance.*

[PROSECUTOR]: He's already acknowledged, as the other witnesses have, that

there were enough hard feelings among these people. But to go into prior, specific acts I think—

THE COURT: That objection remains sustained.

[DEFENSE COUNSEL]: Thank you, your Honor.

(Emphasis added) Later in the trial, defense counsel made an offer of proof, which the presiding justice excluded, in the following exchange:

[DEFENSE COUNSEL]: ... I would like to make an offer of proof, if I can describe it now. We contend that there has been a lot of animosity between the two families and I would like to present the [Poland] daughters to testify, in effect, that Mr. Rivard I think on January 6th came over to the Poland mobile home and he had a pistol in his hand and was threatening to shoot their dog, and that the Poland family called Officer Thompson and there was I guess a discussion about the gun. And Officer Thompson, I think, admonished Mr. Rivard and suggested that he not do it again without some sort of a permit or something. And we're suggesting that that would be a *motive for Mr. Rivard to suggest the story* that he has in terms of revenge against Mr. Poland. Now, Mr. Poland is, I anticipate, going to deny having driven the truck. And I'm searching for a way to reconcile the two stories. And when we have these cases one side or the other is obviously wrong, and I'm suggesting *revenge as a motive for Mr. Rivard fabricating*—and I honestly feel that that would be proper evidence in the matter of weight to be given to it, and certainly admissible.

THE COURT: Okay, I—having reviewed it, I have looked at the evidence which is available which already indicates that they did not get along very well at all, to say the least. You already have the evidence about the swearing incidents back and forth. You already have the evidence about the suit being filed. You already have the admission that they don't get along. I am concerned that this—evidence of this particular incident

over and above that would be unduly prejudicial. Therefore, I'm not going to allow—as I did not allow yesterday—testimony on the matter.

[DEFENSE COUNSEL]: Thank you.

(Emphasis added)

■ M.R.Evid. 403 provides that a trial justice, acting in his discretion, *see State v. DiPietro*, Me., 420 A.2d 1233, 1235 (1980), may exclude even relevant evidence

if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The propriety of the exercise of judicial discretion depends on the particular circumstances under which that discretion is brought into play. *See Leathers v. Stewart*, 108 Me. 96, 102, 79 A. 16, 18 (1911). By the terms of Rule 403 the same discretionary factors are applicable in civil and criminal cases alike. *See State v. DiPietro, supra* (criminal), and *Simon v. Town of Kennebunkport*, Me., 417 A.2d 982 (1980) (civil). However, those factors in a criminal case may take on special significance. For example, the probative value to the criminal defendant of evidence sought to be introduced by him may be enhanced, as it is here, by the fact the witness being impeached is the sole or principal witness for the State or by the fact the evidence is critical to the accused's theory of defense. *Cf. Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In any event, the appellant has the burden of demonstrating that the trial court abused its discretion in excluding the evidence and that he was thereby caused prejudice. *Page v. Hemingway Bros. Interstate Trucking Co.*, 150 Me. 423, 427–28, 114 A.2d 238, 240–41 (1955). There is nothing before us to justify our finding an abuse of discretion here.

The presiding justice stood in a much better position than does this appellate court to apply the Rule 403 factors to the evidence proffered in the trial ongoing before him. Exactly as in *State v. DiPietro*,

*supra,* the jury already had ample evidence of the hostility existing between the State's leading witness and the defendant, and that evidence apparently came from several witnesses in addition to Rivard.[1] Like the witness and the defendant in *DiPierto,* Rivard and Poland were adversaries in pending civil litigation; and they had previously engaged in a swearing match. Rivard by his own testimony acknowledged that he and Poland "didn't get along at all." *State v. Salamone,* 131 Me. 101, 159 A. 566 (1932), the only authority cited by appellant, is here clearly inapposite since in that case the witness denied any feeling of hostility or unfriendliness toward the defendant and yet the latter was prevented from introducing any evidence tending to show the witness's bias. In the case at bar the trial judge properly noted the extensive evidence of Rivard's bias against defendant Poland that was already before the jury.[2] The cumulative nature of the proffered evidence in the instant case reduced its probative value—the factor weighing in favor of its admission.

On the other side of the discretionary scales, the presiding justice recognized the danger that unfair prejudice would result from the proposed digression into the circumstances of a confrontation between Rivard and Poland happening six weeks prior to the February 17th event. "Understandably the justice could have feared that the focus of the case might in the jurors' minds shift from the issues of fact relating to the [February 17th encounter between Rivard and Poland], to the issues of right and wrong in their other stormy dealings." *See State v. DiPietro, supra* at 1235. Even further, the justice could well be concerned that the jury, if it concluded that Rivard had in fact on January 6 confronted the Poland family with a firearm and threatened to shoot their dog, might decide that Rivard, in the damage done to his truck on February 17, had gotten no more than his just desserts. An acquittal for that reason would be obviously unfair in its prejudice to the public interest in getting at the truth of what happened on the evening of February 17, 1980.

The presiding justice refused to allow defense counsel to elicit the details of the alleged January 6 threatening incident on his cross-examination of Rivard, notwithstanding counsel's assertion, as quoted above, that that incident "is material and relates to [Rivard's] possible bias or his willingness to color his testimony and not be entirely truthful in this instance." When counsel, as also quoted above, stated in his subsequent offer of proof, "I'm suggesting revenge as a motive for Mr. Rivard fabricating," we understand he meant merely to repeat his earlier contention, by which he sought to attack Rivard's credibility as a witness. On its face, the proof proffered by defendant cumulatively tended to show bias on Rivard's part, but did not support any defense theory that Rivard had a special motive to "stage" the February 17 events in order to work revenge on Poland. The January 6 confrontation may have incited Poland to take action against his neighbor for that aggression, but has no special tendency to establish that Rivard himself had caused the damage to his own truck in order to blame criminal conduct on defendant Poland. The presiding justice justifiably refused to permit a "trial within a trial" of the January 6 confrontation between the two neighbors.

1. Defendant-appellant has brought up on appeal a transcript of only a part of the evidence below; namely, only the testimony of Rivard.

2. That fact also distinguishes *Davis v. Alaska, supra,* where the exclusion of any evidence as to the witness's being on probation under a juvenile court adjudication, coupled with "his categorical denial of ever having been the subject of any similar law enforcement interrogation," prevented counsel from "mak[ing] a record from which to argue *why* [the witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial." *Id.* at 314, 318, 94 S.Ct. at 1109, 1111 (emphasis in original). As distinguished from his counterpart in *Davis,* defense counsel here was not significantly denied the opportunity "to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Id.* at 318, 94 S.Ct. at 1111.

Rule 403, with the discretionary power it grants the trial judge, is not to be made a shibboleth that when invoked puts as a practical matter every exclusion of relevant evidence beyond appellate review. The judge must in fact assess the relative weight of the Rule 403 factors in the particular trial circumstances in which the admission-of-evidence question arises, and "should generally explain to counsel why [he is] excluding relevant evidence so that counsel can, if possible, obviate the objection." *See* 1 J. Weinstein & M. Berger, *Evidence* 403–15 (1980). However, the judge cannot be expected, in the heat of trial, to give a complete analysis of the kind produced by an appellate court after full argument by the parties and collegial reflection. The presiding justice in the case at bar articulated on the record at least some of the factors bearing upon his exercise of Rule 403 discretion, and we cannot say that his decision to exclude evidence of the January 6 incident was so absent of reasoned support as to be an abuse of that discretion. The entry must therefore be:

Appeal denied.

Judgments of conviction affirmed.

All concurring.