**STATE of Maine**

v.

**Richard WHITMAN.**

Supreme Judicial Court of Maine.

Argued March 12, 1981.

Decided May 4, 1981.

John R. Atwood (orally), Dist. Atty., Rockland, for plaintiff.

Strout, Payson, Pellicani, Cloutier, Hokkanen & Strong, Robert J. Levine, Rockland (orally), for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, GLASSMAN *, ROBERTS and CARTER, JJ.

CARTER, Justice.

Following a jury trial in Superior Court (Knox County), on July 15 and 16, 1980, the defendant was convicted of attempted murder, 17–A M.R.S.A. § 152 (Supp.1980). He was charged with intentionally or knowingly discharging a firearm against the person of Linda Post. On appeal, the defendant contends that errors occurred in the pretrial proceedings, the exclusion and admission of evidence at trial, and the jury instructions. We address two of these contentions and conclude that the conviction must be set aside.

The evidence at trial showed that Linda Post and the defendant had lived together intermittently for several years until they separated permanently in March 1979. According to Post's testimony, the defendant came to her home and awakened her on the evening of June 14, 1979, threatened her, and shot her with a pistol as she ran towards a neighbor's house. She was taken to the hospital and treated for injuries, including bullet wounds. The defendant testified at trial and denied committing the offense, stating that he had spent the evening with friends. The defendant did not call any witnesses to corroborate his alibi.

## I.

■ At trial, Linda Post was the state's principal witness against the defendant. We conclude that the trial court erred by excluding evidence about a civil suit commenced by Post against the defendant, in which she claimed damages arising out of the facts of the alleged crime.

During defense counsel's cross-examination of Linda Post, the court sustained the state's objection to the following question:

Isn't it true that in the summer of 1979 you had your lawyer send a letter to Richard Whitman saying that if he didn't give you a sum of money that you were going to bring suit against him?

The defendant did not at that point make any offer of proof concerning the nature of the threatened litigation.

In the defendant's own direct examination, the court again sustained the state's objection to the question: "Has a law suit been served upon you?" The defendant then made the following offer of proof:

I would like to make an offer of proof that on July 15th, 1980, Richard Whitman was served with a complaint, a civil complaint for intentional infliction of personal injuries against Linda Post, arising out of the same alleged facts and circumstances in this case, from the situation dated June 14th, 1979. She is suing him for $12,000.

The court sustained the state's objection, stating:

[The action was brought] a year subsequent to the purported report to the police, and I don't see that it would have anything to do with impeachment, and I think there is the danger of a prejudicial effect that would outweigh the probative value . . . .

The court's ruling therefore included both a determination that the evidence was not relevant, M.R.Evid. 401, and a determination that its probative value was substantially outweighed by the danger of unfair prejudice, M.R.Evid. 403.

■ The court apparently concluded that the civil suit was irrelevant because it was commenced after Post's report to the police

---

* Glassman, J., sat at oral argument and in the initial conference, but did not participate further in this decision.

and therefore would not have given her a motive for lying to the police. The suit could, however, have given Post a reason to falsify or exaggerate in her testimony at trial. A pending civil suit, or even a contemplated suit, arising out of the same incident that gave rise to the criminal charges is almost always relevant to the credibility of a prosecuting witness because it gives her a financial interest in the outcome of the criminal prosecution. Such evidence has great probative value because it shows that the state's prosecuting witness "may have been actuated by personal considerations instead of altruistic interest generated solely from motives in the public interest to bring a criminal to justice." *State v. Doughty*, Me., 399 A.2d 1319, 1324 (1979).

■ Although the defendant made no specific offer of proof during his cross-examination of Post, he was entitled to introduce the evidence through his own testimony. Evidence of a witness's bias and personal interest is not limited to cross-examination and no preliminary foundation is necessary. *Id.* at 1324.

■ The state argues, citing *State v. Dodge*, Me., 397 A.2d 588 (1979), that the court's ruling was proper because the defendant did not offer into evidence the complaint Post had served against him. Our decision in *Dodge* created no such requirement. In *Dodge* the defendant apparently sought to impeach the prosecuting witness by showing that his testimony at the criminal trial contradicted allegations in his civil complaint and his answers to interrogatories. On appeal, we noted that since the defendant had not provided the Law Court with a copy of the complaint or interrogatories, it was difficult to review the trial court's exclusion of testimony about the civil action. In the case before us, the excluded evidence was simply the *fact* that Post had commenced a civil suit based on the events giving rise to the criminal prosecution, and there is no reason to require that the actual pleadings be entered into evidence or included in the record on appeal.

Although the fact of Post's civil suit was clearly relevant to her credibility, its admission into evidence was still subject to the court's discretion under M.R.Evid. 403. We are satisfied, however, the the defendant has met his burden of demonstrating that the trial court abused that discretion. *See State v. Poland*, Me., 426 A.2d 896, 900 (1981). Since Linda Post was the state's principal witness, evidence tending to impeach her credibility had greatly enhanced probative value. *Id.* We do not see how this highly probative value could be "substantially outweighed" by the factors on the other side of the Rule 403 balance: "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The defendant was not proposing a digression into an unrelated matter that might confuse or mislead the jury or prejudice the public interest in getting at the truth of the events in question. *Id.* at 898.

The state argues that the evidence was properly excluded because testimony from both Post and the defendant had already produced ample evidence of the hostility and antagonism between them, so that further evidence would be merely cumulative and time-wasting. *See State v. DiPietro*, Me., 420 A.2d 1233, 1235 (1980). None of the other evidence, however, showed that Post had a specific, independent financial interest in the outcome of the prosecution. Even beyond the personal animosity that would make Post's interests adverse to those of the defendant, her civil damage suit gave her an additional pecuniary motivation for bias against the defendant and hostility to his case.

We are unable to say that the defendant was not prejudiced by the court's ruling. Linda Post's credibility was a critical element in the state's case against the defendant. The potential for prejudice to the defendant was overwhelming in light of remarks made in the prosecutor's closing argument to the jury. Since the jury had received no evidence about a pending or contemplated civil suit, the prosecutor was

able to argue Post's *lack* of any financial interest in order to *support* her credibility:

[A]ll you heard was that there was animosity between them.... To leap from animosity to prejudice is asking the jury to do the same thing that I hope you're not going to do, by assuming answers to questions that you never heard any testimony about at all.

. . . . .

[Y]ou're supposed to assume that because she has these two wounds, and that she was in the hospital for a day and half or two days, that she has a financial interest in what we are doing here. Well, the name of this case is not Linda Post versus Richard Whitman; the name of this case is State of Maine versus Richard Whitman, and no matter what happens here, no matter what your verdict is, it being guilty, not one penny inures, goes to Linda Post.

. . . . .

[Defense counsel] would say that the only person that had anything to gain by stating something other than the truth on the witness stand is Linda Post, and yet no matter what you do today, it will have no consequence to her at all, whatsoever, none.

This argument did great injustice to the defendant. The defendant was entitled to have the jury hear that there was a suit entitled "Linda Post versus Richard Whitman." In light of that suit, the argument

that Post would receive no benefit from a guilty verdict was very misleading. Evidence of a final judgment of conviction may be admissible in Post's civil suit in which she claimed substantial money damages. *See* M.R.Evid. 803(22); R. Field and P. Murray, *Maine Evidence*, § 803.22 (1970). *But cf. Lipman Brothers, Inc. v. Hartford Accident & Indemnity Co.*, 149 Me. 199, 100 A.2d 246 (1953) (stating traditional rule that judgment of conviction is not admissible in civil proceeding). Also, a criminal conviction could very well increase Post's chances of obtaining a settlement of her suit for personal injuries and medical expenses. Therefore, the exclusion of evidence about the civil suit, together with the prosecutor's argument exploiting that exclusion, resulted in prejudicial error and entitles the defendant to a new trial.

### II.

The defendant contends that the trial court also erred by permitting prosecutorial comment on the defendant's failure to call his alibi witness and by instructing the jury on the permissible inference to be drawn from that failure.

In response to the state's demand for notice of alibi, pursuant to M.R.Crim.P. 16A(b),[1] the defendant had filed a notice stating that he intended to call Marlene Martin as a witness to establish his alibi that he was at Marlene Martin's home at the time of the alleged offense on June 14,

---

1. Subdivision (b) of M.R.Crim.P. 16A (Added eff. Jan. 3, 1978) provides:

    No less than ten days before the date set for trial, the attorney for the State may serve upon the defendant or his attorney a demand that the defendant serve a notice of alibi if the defendant intends to rely on such defense at the trial. The demand shall state the time and place that the attorney for the State proposes to establish at the trial as the time and place where the defendant participated in or committed the crime. If such a demand has been served, and if the defendant intends to rely on the defense of alibi, not more than five days after service of such demand, he shall serve upon the attorney for the State and file a notice of alibi which states the place which the defendant claims to have been at the time stated in the demand and

    the names and addresses of the witnesses upon whom he intends to rely to establish such alibi. Within five days thereafter, the attorney for the State shall file and serve upon the defendant or his attorney a written notice stating the names and addresses of the witnesses upon whom the State intends to rely to establish the defendant's presence at the time and place stated in the demand.

    If the defendant fails to serve and file a notice of alibi after service of a demand, the court may take appropriate action. If the attorney for the State fails to serve and file a notice of witnesses, the court shall order compliance pursuant to Rule 16(c)(1). The fact that a witness's name is on a notice furnished under this subdivision and that he is not called shall not be commented upon at trial.

1979. At trial, the defendant testified in his own defense and stated that he had spent the evening of June 14 with various friends, including Marlene Martin. Neither the state nor the defendant called Marlene Martin as a witness or presented any evidence as to her whereabouts at the time of trial. In a conference in the court's chambers after the close of the defendant's case, both counsel indicated that they had been unable to find Martin.

At the state's request, over the defendant's objection, the court gave the following instruction to the jury:

> You may also consider in your deliberations the unexplained failure of a party to present an obvious witness to corroborate other evidence which was presented in the case. If you find that a party has failed to call such a witness, you may, but you are not compelled to draw an inference that that witness would not corroborate the testimony given before you. This is an inference that you may draw, but you do not have to draw; that is up to you.

In addition, the court refused the defendant's request for "an instruction to the effect that a witness is available to both parties."

The court also told counsel that the absence of a witness was "an appropriate subject for argument." In his closing argument, the prosecutor called attention to the defendant's failure to call any witnesses to corroborate his alibi:

> Defendant has no burden at all, but when they raise an issue in this case, an alibi, they have the same resources and the same power to call witnesses in the courtroom as does the prosecution. The same power. Where are all those people who could substantiate that alibi? His friend, Marlene Martin, as an example.... If the story were true, there is at least one witness who could substantiate it in detail .... They were never produced.... What does ... the absence of the third party witness—apparently a friend of Mr. Whitman's tell you about this defense?

We have previously observed that, under certain circumstances, the jury is entitled to draw an adverse inference from a party's failure to call a witness who would be expected to corroborate that party's testimony. *See State v. Hanks*, Me., 397 A.2d 998, 1000 (1979); *State v. Cugliata*, Me., 372 A.2d 1019, 1032, *cert. denied*, 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977); *State v. Silva*, 153 Me. 89, 101–02, 134 A.2d 628, 634 (1957); *Wright v. Bubar*, 151 Me. 85, 91, 115 A.2d 722, 725 (1955); *State v. O'Donnell*, 131 Me. 294, 303, 161 A. 802, 806 (1932). We have not, however, previously expressed an opinion on the propriety of an instruction inviting this inference. *Cf. State v. Wing*, Me., 426 A.2d 1375, 1377 (1981) (upholding trial court's denial of defendant's request for instruction regarding state's failure to call a witness). Although we have not found prosecutorial comment on a witness's absence to be *per se* improper, we have recognized that it can be unfair under certain circumstances. *State v. Farris*, Me., 420 A.2d 928, 935 n.5 (1980); *State v. Bey*, Me., 342 A.2d 292, 298 (1975).

██ We conclude that the circumstances of this case, particularly in light of the Rule 16A(b) alibi notice, made the instruction and argument unfair to the defendant.

The permissible inference has traditionally been described in the following terms:

> [I]f a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates a presumption that the testimony, if produced, would be unfavorable.

*Graves v. United States*, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893). *See* McCormick, *Law of Evidence* § 272 (E. Cleary ed. 1972); 2 Wigmore, *Evidence* § 286 (Chadbourn rev. 1979). On the record before us, we conclude that the evidence did not permit such an inference by the jury and that the court therefore had no basis for allowing prosecutorial comment or giving the instruction requested by the state. There is no evidence that Marlene Martin was physically available to be called as a witness by either side, much less any indica-

tion that the defendant had it "peculiarly within his power to produce" her. Although the evidence showed that the defendant had previously lived with Marlene Martin and that he was visiting at her father's home at the time of his arrest, there was no evidence that their relationship still existed at the time of trial more than a year later. There was no indication that the defendant had greater knowledge of her whereabouts and it was purely a matter of speculation as to whether she would have corroborated the defendant's alibi or the state's version of the events.

The state's use of the Rule 16A(b) discovery mechanism made any inference against the defendant particularly inappropriate. Rather than inviting the jury to speculate on what Martin's testimony would have been, the state could have called her as a witness and put that testimony before the jury. Since the alibi notice gave the state advance knowledge of the identity and last known address of the defendant's alibi witness, it was equally within the state's power to produce her. But since Rule 16A(b) forbids comment on the alibi notice, the jury could not be told that the state had this advance notification. Since the court refused to instruct that the witness was equally available to both parties, the jury might well have assumed that Martin's whereabouts were known only to the defendant.

Under these circumstances, mere "unexplained failure" to present a witness was not a sufficient basis for an adverse inference. If Martin was unavailable to both sides because her whereabouts were unknown, then it was unfair for an inference to be drawn against the defendant. Although, as a tactical matter, the defendant might have been wise to explain the absence of his alibi witness, his failure to do so, in the absence of any indication that he deliberately procured her absence, did not provide an adequate basis for subjecting him to the instruction and prosecutorial comment.

Since we have already concluded that the trial court committed prejudicial error in excluding evidence about Post's civil suit, we need not decide whether the instruction and prosecutorial comment on the absent witness would, alone, be grounds for setting aside the conviction. We have examined the defendant's remaining arguments and conclude that there were no other errors or abuses of discretion.

The entry is:

Judgment of conviction vacated. Remanded to Superior Court for further proceedings consistent with the opinion herein.

McKUSICK, C. J., and NICHOLS, J., concurring.

ROBERTS, J., with whom GODFREY, J., joins, concurring in separate opinion.

ROBERTS, Justice, with whom GODFREY, Justice, joins, concurring.

I concur in part I of the majority opinion and in the result reached in part II. I find it necessary, however, to state separately my views concerning the missing witness instruction discussed in part II. This is the first case since the adoption of the Maine Rules of Evidence where we are squarely faced with the question of the propriety of a jury instruction on a defendant's failure to call a witness. Because of the change effected by adoption of the evidence rules, we should now reexamine the limitations upon the missing witness instruction in a criminal case.

The significance of the adoption of the Maine Rules of Evidence lies in rule 607, which states: "The credibility of a witness may be attacked by any party, including the party calling him." This rule changed traditional Maine practice, under which a party "vouched" for the credibility of a witness called by him, see *State v. Fournier*, Me., 267 A.2d 638, 640 (1970); R. Field and P. Murray, *Maine Evidence* § 607.1 (1970), and thus was unlikely to call a witness whose testimony might be adverse.

The relationship between the vouching concept and creating an inference from a missing witness is illustrated by the approach taken by the First Circuit Court of Appeals in *United States v. Wright*, 573

F.2d 681 (1st Cir. 1978). There, the court found no error in the prosecutor's comments on the defendant's failure to call two witnesses, even though, as the defendant argued, the witnesses were present in court and thus were equally available to the prosecution. The court adopted the position that "a witness's practical and legal availability is to be determined on the basis of his disposition and relationship towards the parties." *Id.* at 684. Pointing to the close association of the witnesses to the defendant, extending to their sitting with him during trial, the court found that their relationship with the defendant and the expected nature of their testimony made them *not* equally available to the prosecutor, so his comment was permissible. *Id. See also United States v. Johnson,* 467 F.2d 804, 809 (1st Cir. 1972); *McClanahan v. United States,* 230 F.2d 919 (5th Cir. 1956) (defendant's attorney); *Dent v. United States,* 404 A.2d 165, 170 (D.C.App.1979) (family members).

Even prior to the change in our rules of evidence there was a logical inconsistency in saying (1) the prosecution can rely on the adverse inference to be drawn from a defendant's failure to call a witness supposed to be friendly to the defendant and (2) the prosecutor can excuse his failure to call that witness, who was equally available to him, on the basis of *practical* unavailability because the witness is predisposed to testify favorably to the defendant. If the one inference that the witness is predisposed to testify favorably to the defendant justifies the prosecutor's failure to call the witness, then how can the prosecution ask the jury to draw the opposite inference, i. e., that the witness's testimony would have been unfavorable to the defendant? I do not believe that these circumstances support any inference at all.

Even where the witness is not equally available to the prosecutor, allowing an inference to be drawn from the defendant's failure to introduce evidence distorts the allocation of the burden of proving his guilt. Ordinarily, the defendant has no obligation to present evidence on his behalf. Yet, according to the missing witness instruction, the state may be able to rely on an inference arising from his failure to produce evidence as evidence against him, thus effectively "creat[ing] evidence from nonevidence." *Dent v. United States,* 404 A.2d 165, 171 (D.C.App.1979). Absent action by the defendant that by itself demonstrates a consciousness of his guilt, as, for example, by actively procuring the witness's absence, the state should not be able to gain an advantage from the exercise of his right not to be compelled to produce evidence.

My concern is not with impeaching the defendant's credibility or attacking the weight of his testimony by commenting on its lack of corroboration. Therefore, the prosecutor's comment on the lack of support for the defendant's alibi might have been allowable here, except that he *knew* the witness was unavailable to either party. *See State v. Gilcott,* Me., 420 A.2d 1238, 1240 (1980). The trial court, however, went further and specifically instructed the jury that it could infer that the absent witness's testimony would be adverse to the defendant. Instructing that the defendant's failure to call a witness can rise to the level of affirmative evidence assisting in the prosecution of the case has the effect of instructing that the defendant has assumed a burden of proof or, at the least, that the state's burden has decreased.[1] I find that proposition unacceptable. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

1. As the majority opinion points out at page 207, the use of the inference can be subject to abuse. Some courts have promulgated prophylactic measures to prevent abuse. *See Dent v. United States,* 404 A.2d 165 (D.C.App.1979).

Such measures frequently involve an exploration of collateral issues to an extent unwarranted by any probative value inherent in the inference and frequently fail to eliminate the abuse.